**In the Matter of The Honorable Jack DUNCAN, Judge, Respondent.**

**No. 59539.**

Supreme Court of Missouri, En Banc.

Oct. 12, 1976.

Rehearing Denied Oct. 27, 1976.

Raymond R. Roberts, Roberts & Roberts, Farmington, for Commission.

Donald E. Lamb, Centerville, for respondent.

PER CURIAM.

The respondent is the probate judge and ex officio magistrate of Iron county, Missouri. The Commission on Retirement, Removal and Discipline (commission), pursuant to Art. V, sec. 27, Mo.Const., and Rule 12 of the Supreme Court, found respondent to have violated the constitution and statutes of Missouri, Supreme Court rules, and the Code of Judicial Conduct, in six of the seven charges filed against him. The commission unanimously recommended under Rule 12.08 that respondent be removed from office. This case is on review before this court pursuant to Art. V, sec. 27, Mo. Const., and Supreme Court Rule 12.

We cannot discern from the transcript or briefs the exact times during which respondent was probate judge and ex officio magistrate of Iron county. However, it is clear that of the seven findings made by the commission, the acts referred to in the third, fourth, and fifth findings occurred in 1970 while respondent was probate judge and ex officio magistrate; that sometime thereafter, but not as a result thereof, respondent returned to the private practice of law for about ten months; that respondent again became probate judge and ex officio magistrate and was reelected in 1974 to the four-year term which he is presently serving. Findings one, two, six, and seven re-

late to incidents alleged to have occurred during his present term.

Respondent lives on College Street in Arcadia, Missouri, is married, has five children, and his home is across the street approximately one-hundred yards from Mrs. Neiderjohn's home. On October 12, 1975, a Sunday, respondent's wife was out of town. The respondent was at home with his children until about noon at which time he had to leave. When he returned home at approximately 4:00 p. m., his children informed him a fight had occurred between his youngest son and Mrs. Neiderjohn's son. Furthermore, the children told respondent that Mrs. Neiderjohn had threatened to blow their brains out and she had bought a gun for that purpose which was in her house.

At the time respondent learned of the threats, Mrs. Neiderjohn and her son were at home. The respondent remained in his house until approximately 5:30 p. m. when he saw the Neiderjohns leave in their car. Respondent testified that he was very concerned that Mrs. Neiderjohn had a gun in her house, as he had heard four months before that she was shopping for one and he was now afraid she would shoot the children. With this in mind, he went across the street to the Neiderjohn home, kicked in the locked door, searched the house, ransacking drawers, but failed to find a gun. He did however find an axe handle and a length of pipe which he took but, according to his testimony, he dropped them on the front lawn and went home. He testified that subsequently he went back and picked them up and took them home. He then called the sheriff's office and told them what he had done and requested that the sheriff stop Mrs. Neiderjohn and search her for a gun since he had not found one in her home.

There was substantial evidence that over a period of a couple of years Mrs. Neiderjohn had made threats of one kind or another to the respondent and others; that she constantly complained about how her son was treated by school authorities, by neighbors, and by other children. Although these complaints extended over a couple of years, there is no evidence that she ever carried out any of the threats.

The events described above resulted in the most serious charge brought against respondent and triggered the complaint to the commission. Respondent admits the facts found by the commission as to this charge are true.

The commission's finding is as follows:

"1. On October 12, 1975, Respondent forcibly broke into and entered the residence of Mrs. Barbara Lewis Neiderjohn of Arcadia, Missouri, while Mrs. Neiderjohn was absent and while said residence was locked, by forcibly breaking the lock on the front door of said residence. The Respondent thereupon proceeded to enter the residence and to conduct a search of the Neiderjohn residence, ransacking and disturbing the contents thereof. Both the entry into the residence and search thereof were conducted without a search warrant and under circumstances where no legal search warrant could have been obtained. The Respondent took from the residence a tool handle and a length of metal pipe. The Respondent thereupon left the Neiderjohn residence taking such items, leaving its contents in a disturbed condition, the front door in an unlocked condition, and the front door lock in a broken condition. Respondent thereupon notified the Iron County Sheriff's Office of his conduct and directing such Sheriff's Office that he wanted 'the bitch', referring to Mrs. Neiderjohn, stopped and searched."

The commission's conclusion of law as to the above finding is as follows:

"1. By breaking into and searching the Neiderjohn home Respondent violated Supreme Court Rule 2, Canon 2, and 3C, as amended, effective July 15, 1975, by his failure to comply with the law, by permitting his family relationships to influence his conduct and judgment, and by failing to disqualify himself from a matter in which he had a personal bias. In addition, this conduct, carried on without a search warrant, was in direct violation of Article I, Section 15, of the Missouri Constitution, the Fourth Amendment to the Constitution of

the United States of America, and the following Missouri Statutes and Supreme Court Rules: Section 560.045 RSMo 1969 (burglary not first degree); Section 558.110 RSMo 1969 (oppression in office); Section 558.190 RSMo 1969 (seizing property without legal process or lawful authority); Rules 33.01 and 33.02 VAMR (search without a lawful warrant); and Senate Bill No. 366, effective August 13, 1974, of the unclassified laws of 1974 (search of a residence without a valid warrant)."

■ The respondent first claims that he was denied due process of law because the commission's structure combines both prosecutorial and adjudicatory functions in the same body. If this was actually the case, then we would agree with respondent that such a proceeding would be unfair. A fair trial and a fair tribunal are essential to due process and the combination of prosecutor and judge in one body creates a high probability of unfairness. *In re Murchison*, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955). However the respondent has cited no authority or facts which would lead us to the conclusion that the procedure followed by the commission fell short of the level prescribed by the due process clause.

■ Contrary to the respondent's assertion that the commission is both prosecutor and judge, we are of the opinion that they act as investigators and judges. Under Supreme Court Rule 12.08, the commission conducts an initial investigation to determine whether probable cause exists to believe the person under investigation is guilty of misconduct. If four members of the commission determine that probable cause exists, the commission holds a formal hearing. At the investigatory stage the respondent is given notice and a reasonable opportunity to present such matters as he may choose; at the formal hearing if probable cause is found an opportunity to present evidence and cross-examine witnesses is afforded. Rules 12.08 and 12.20. We are unable to conclude that this constitutes a prosecution as respondent contends even though the commission asks questions of the witnesses. Although an investigator is allowed to ask questions of witnesses, it does not necessarily make him a prosecutor. Using the respondent's logic, we would have to conclude that every time a trial judge asked a witness a question to clarify a matter he would become a prosecutor.

■ The combination of the investigatory and adjudicatory functions does not violate the strictures of the due process clause. *Withrow v. Larkin*, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975). *Larkin* involved the suspension of a doctor's license by the state medical board and the U.S. Supreme Court held that the combination of these functions did not contain in themselves an unacceptable risk of bias. In *McCartney v. Commission on Judicial Qualifications*, 12 Cal.3d 512, 116 Cal.Rptr. 260, 267, 526 P.2d 268, 275, n. 7 (banc 1974), the Supreme Court of California reviewed a constitutional provision and hearing procedures similar to those in the instant case and rejected as without merit a claim that the combination of investigatory and adjudicatory functions constituted a denial of due process. Furthermore, we note that only this court can make the ultimate adjudication which removes a judge from office for misconduct, etc., or otherwise disciplines a judge. Art. V, sec. 27, subsec. 3, Mo. Const., as amended; Rule 12.08. And, where judicial review is afforded, as it is here, the fact that charges are initiated by the administrative agency which then tries the matter does not, of itself, constitute a denial of due process. See *Rose v. State Board of Registration for Healing Arts,* 397 S.W.2d 570, 574 (Mo.1965), and cases cited therein. The commission complied with the applicable rules of this court and those rules afforded respondent due process of law.

The respondent claims he is entitled to have the measure of the burden of proof be beyond a reasonable doubt rather than by a preponderance of the evidence. The present law in Missouri on retirement and removal of judges is patterned after the law in California (Cal.Const., VI, sec. 18). The Supreme Court of California has held the burden of proof in cases involving the removal of judges is to be measured by

"clear and convincing evidence". *Spruance v. Commission on Judicial Qualifications,* 13 Cal.3d 778, 119 Cal.Rptr. 841, 532 P.2d 1209 (banc 1975). The reason given for using this standard was that it was the same as that used in disciplinary proceedings for lawyers before the state bar. *Geiler v. Commission on Judicial Qualifications,* 10 Cal.3d 270, 110 Cal.Rptr. 201, 515 P.2d 1 (banc 1973), cert. den. 417 U.S. 932, 94 S.Ct. 2643, 41 L.Ed.2d 235 (1974).

■■■ In Missouri, however, disciplinary proceedings for lawyers require the charges be sustained by a preponderance of the evidence and not beyond a reasonable doubt or by clear and convincing evidence. *In re Warden,* 347 Mo. 196, 146 S.W.2d 874 (1940); *In re Mason,* 203 S.W.2d 750 (Mo.App.1947). Using the logic of the California courts and realizing the similarity between the disciplining of lawyers and judges, we find that the amount of proof necessary to sustain a charge is the preponderance of the evidence.

As to the first finding and conclusion that it was improper for respondent to break into the Neiderjohn home and remove a piece of pipe and an axe handle, the respondent contends he was justified because (1) the action taken came within the privilege of self-defense and defense of family; (2) respondent by statute is a conservator of the peace; and (3) his action came within the exigent circumstances exception for warrantless searches. There is no question that respondent did break into the Neiderjohn home and remove the property mentioned above; he admits he did.

■■■ Respondent cites a number of cases dealing with the privilege of self-defense. All of these cases however deal with the privilege as it relates to self-defense against an aggressor who sought to attack a defendant and not with a privilege to break into someone's home to protect against a possible attack in the future. Respondent cites no cases directly on this point and in our own research we have failed to find any. One thing however which all the cases on self-defense require is that to justify the use of self-defense the party must have a real or apparently real necessity, and the claimant must have done everything within his own power, consistent with his safety, to avert the necessity. *State v. Young,* 510 S.W.2d 732 (Mo.App.1974). In other words, even if the privilege of self-defense would apply in the instant case, and it does not, the respondent would have to show he had a reasonable apprehension of immediate death or serious bodily harm to himself or a member of his family from Mrs. Neiderjohn.

■■■ The evidence, though, does not substantiate such a reasonable apprehension. The respondent claims he had a reasonable fear because Mrs. Neiderjohn threatened the lives of his children, and she was a violent woman who made numerous threats and was known to have been pricing guns in a sporting goods store. On its face, this may appear to be quite serious but in light of all the facts we cannot conclude that respondent had a reasonable apprehension of harm from Mrs. Neiderjohn. The incident with respondent's children occurred approximately five hours before he broke into the Neiderjohn home and by which time all the children were safe at home. As to the Neiderjohn woman's violent character and threats, there is no question that she had in the past made numerous threats, but there is evidence suggesting that the threats were empty and vague, and people in the community did not take them seriously. And with respect to Mrs. Neiderjohn's pricing of guns, the evidence shows that respondent knew she had not purchased one. We are of the opinion that the facts simply do not support a reasonable apprehension or fear of harm on the part of respondent to justify a claim of self-defense.

■■■ Respondent next contends he was justified in breaking into the Neiderjohn home because in his role as a conservator of the peace he would have been guilty of a misdemeanor had he not done so. The respondent is correct when he describes himself in his position of magistrate judge as being a conservator of the peace pursuant

to section 542.020, RSMo 1969. He goes on to justify his actions on the basis of section 542.150, RSMo 1969, which places upon conservators of the peace the duty to disperse rioters, and section 543.060, RSMo 1969, which requires a magistrate to arrest any person who commits, threatens, or attempts "any affray or breach of the peace" in his presence. Furthermore, had he not acted as he did, he claims he would have been guilty of a misdemeanor under section 542.250, RSMo 1969. The respondent's contention is without merit because he does not come within the bounds of the statutes. He was neither involved in dispersing a riot nor was an "affray or breach of the peace" being committed, threatened, or attempted in his presence.

■ Respondent also contends he was justified in breaking into the Neiderjohn house to conduct a search for weapons without a warrant under the exigent-circumstances doctrine. Respondent concedes that under the facts of this case he could not have obtained a search warrant under the applicable Missouri statutes. Section 542.271, RSMo Supp.1976, provides in part: "A warrant may be issued to search for and seize . . . [a]ny weapon, tool, device, or substance which has been used as means for committing a felony . . ." No provision is made for weapons which might be used in the future for committing a felony. Respondent claims one of the requirements of the exigent-circumstances doctrine is that a search warrant was not available. It appears to be respondent's reasoning that the absence of grounds upon which a search warrant could be obtained by which a search could have been conducted of the Neiderjohn home by police officers becomes the legal authority which authorizes the private person to break in and ransack a private home. We think that the simple exposure of this convoluted reasoning demonstrates its absurdity. We are also of the opinion that respondent fails to come within the bounds of the exigent-circumstances doctrine either as a private citizen or a magistrate judge because no exigent circumstances existed.

Respondent states that in Missouri warrantless searches of dwelling houses are legal under circumstances where "(a) there is a reasonable cause to believe that death or serious harm to any person or to members of the public in general, or the destruction or removal of criminal evidence, will result without an immediate search, and (b) a search warrant is not obtainable or will take too long to get." Even if we accepted the respondent's statement of the law, which we don't, he has not established that "exigent circumstances" existed under the rule as he states it. As stated above, we find no reasonable grounds to believe anyone was in danger from Mrs. Neiderjohn and, furthermore, there was no danger of the destruction of criminal evidence because no crime had been committed.

■ The Fourth Amendment is intended to protect the privacy of the individual from unreasonable searches and seizures. *Warden, Maryland Penitentiary v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). Generally, the requirement that a police officer must obtain a warrant prior to conducting a search and seizure is meant to protect the individual's privacy by assuring that searches and seizures are reasonable. There are, however, certain exigent circumstances under which a search and seizure may be conducted without a warrant. This though does not remove the requirement that the search and seizure must still be reasonable and it is the exigencies of the situation which makes the warrantless search reasonable. 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782. In *Hayden* there was a possibility that more than one person or additional undiscovered weapons were in the house which posed a danger to the lives of the police or others. In the instant case the circumstances did not pose a danger to anyone; therefore, under the rationale of *Hayden,* it was not reasonable to enter the house without a warrant. In addition the court in *Hayden* stated, "There must, of course, be a nexus—automatically provided in the case of fruits, instrumentalities or contraband—between the item to be seized and criminal behavior." 387 U.S. at

307, 87 S.Ct. 1642. In the instant case there had been no criminal behavior on the part of Mrs. Neiderjohn; therefore, no nexus existed.

In *State v. Wiley*, 522 S.W.2d 281 (Mo. banc 1975), the court said a warrantless search of the house in question was justified because there was a possibility of evidence, i. e., drugs, being removed or destroyed. Once again, in the instant case, there had been no crime committed and therefore no evidence existed which might have been destroyed or removed. Furthermore, the respondent knew that no one was in the house who could have tampered with this hypothetical evidence. In *Wiley* the police were afraid that if they left the apartment to obtain a warrant some unknown individuals seen in the area might have entered the apartment and removed the evidence of the crime, i. e., drugs.

Finally, all of the cases cited by respondent suggesting that exigent circumstances were present involved the actual commission of a crime but in the instant case no crime had been committed. Furthermore, those cases concerned the question of whether evidence seized pursuant to the search was admissible in a criminal trial. In the instant case respondent seeks to justify his breaking and entering on the basis that he acted as a private person in fear of some future harm that Mrs. Neiderjohn might have done to his children. The "exigent circumstances" exception has no application to the acts of a private person. His conduct is not justifiable on any theory of self-defense or defense of his family. Were a court to accept respondent's reasoning as justification for his conduct, the simple result would be that everyone's home could be legally burglarized upon the subjective belief of another that the homeowner may cause him harm in the future.

■ Next the respondent argues he did not commit a burglary in the second degree because he lacked the requisite intent to keep the property. Section 560.045, RSMo 1969, makes no mention of the words "intent to keep" but instead only requires a person to have broken into a dwelling house with the "intent to commit a felony or [steal]". Nowhere in the definition of stealing, section 560.156, RSMo 1969, is there a requirement that the person have an "intent to keep" the property. That section defines "steal" as "to appropriate by exercising dominion over property in a manner inconsistent with the rights of the owner, either by taking, obtaining, using, transferring, concealing or retaining possession of his property." In *State v. Chambers*, 524 S.W.2d 826, 829 (Mo. banc 1975), the court with reference to stealing made no mention of any intention to keep, but instead called it an "intentional taking of property of another without his consent and with intent to deprive the owner of the use thereof."

In the instant case respondent admittedly broke into the Neiderjohn home with the intent to search for and take away a gun he believed was present. In fact he found no gun but did take other property of Mrs. Neiderjohn—an axe handle and a piece of metal pipe—without her consent, and he exercised dominion over that property inconsistent with the rights of the owner. Regardless of whether he intended to keep the property, under the evidence adduced he could have been charged with and been found to have committed burglary in the second degree.

■ The court concurs in the findings and conclusions of the commission as set forth in its first finding. The conduct of respondent if engaged in by a private citizen would be highly reprehensible. This conduct when engaged in by a judge is intolerable and demonstrates an attitude that cannot be countenanced on the part of a person who sits in judgment of others.

Judge Duncan violated Rule 2, Canon 2(A), which provides: "A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." For his actions in the Neiderjohn affair alone, he should be and he hereby is removed from the office of judge of the probate court and ex officio magistrate of Iron county, Missouri.

Having concluded that Judge Duncan's conduct in breaking into the Neiderjohn home and the taking of property therefrom is more than sufficient in itself to demand removal from office, the court need not decide other objections presented in respondent's brief relating to other charges and findings.

It is accordingly ordered, adjudged, and decreed by this court that respondent, Jack Duncan, be and is hereby removed from office of probate judge and ex officio magistrate of Iron county, Missouri.

All of the Judges concur.