**In re The Honorable Ronald HILL, Respondent.**

No. SC 81743.

Supreme Court of Missouri, En Banc.

Jan. 11, 2000.

James M. Smith, St. Louis, for Informant.

Ryan S. Shaughnessy, Clayton, for Respondent.

DUANE BENTON, Judge.

The Commission on Retirement, Removal and Discipline unanimously recommends that this Court remove Judge Ronald D. Hill as municipal judge for the city of Potosi. After considering the recommendation and reviewing the record, this Court suspends Judge Hill for the remainder of his term as municipal judge.

I.

On April 7, 1998, Ronald D. Hill was re-elected to a two-year term as the (lay) municipal judge of Potosi. At the same election, John L. Boyer became mayor of Potosi.

On April 13, the mayor asked the Board of Aldermen for a motion to terminate the police chief. After discussion, no motion was made.

At the same Board meeting on April 13, the mayor questioned whether the city was required to provide health insurance for elected officials. At a special meeting on April 16, the Board discussed this "at great length." On April 17, the city attorney opined that, by ordinance, the city should not pay for health insurance of elected officials. On April 17, the mayor notified the health plan that the city would no longer pay premiums for Judge Hill.

On April 24, Judge Hill issued an order *sua sponte: "ALL FINES ARE $1 PLUS $21 COURT COSTS."* He instructed the police chief to post the order at the station to inform the officers. The Board authorized a mandamus action against the order. The order stayed in effect until May 6, when Judge Hill ordered: "ALL FINE AMOUNTS WILL RETURN TO THEIR PREVIOUS SET AMOUNTS." In the interim, nineteen cases were disposed with $1 fines—including charges for driving while revoked, assault, assault on a police officer, resisting arrest, peace disturbance, stealing under $15, and various traffic violations. No restrictions were placed on the type of charge eligible for $1 fines.

Also on April 24, Judge Hill ordered the police chief to release all city prisoners in the jail, on a summons to appear in municipal court. Three prisoners were released, two to other jurisdictions and one on the summons alone. Two prisoners previously had bonds set at $500 and $352, for charges of failure to appear and driving while revoked. Like the $1 fine order, no restrictions were placed on the type of charge handled by summons, rather than a cash bond.

At its meeting on April 27, the Board again discussed health insurance for elected officials. Leaving the meeting, Judge Hill said, "It's a good thing I left my gun at home because I might have shot the mayor," "I ought to go up and kill him," or words to that effect. None of the witnesses reported this comment to the police. Further, in April and May 1998, Judge Hill and the mayor publicly disputed whether the court clerk worked only for the court, or also for the "front office."

During the same time period, Judge Hill wrote an "OPEN LETTER – TO THE CITIZENS OF POTOSI." The letter criticized the mayor, praised the police chief, and urged the citizens to support the chief. (See the Appendix for the full text of the letter.)[1] Judge Hill submitted the letter for publication in the local newspaper.

On May 15, private attorneys for Judge Hill wrote the mayor, requesting reinstatement of his health insurance. After the city declined, Judge Hill sued the city and

1. The letter and the newspaper clip are undated. See *Appendix*. Judge Hill says that the letter appeared "over a month" after "April 13, 1998."

the mayor in circuit court; the case is still pending.

On February 15, 1999, Judge Hill was scheduled to hear a case where the mayor's daughter and her boyfriend were victims of an assault and trespass. They were subpoenaed four days before trial, but failed to appear. The defendant appeared, and the prosecutor dismissed the case – the standard procedure where witnesses fail to appear. Judge Hill then asked the prosecutor whether the victims' failure to appear was contempt of court. After the prosecutor responded affirmatively, Judge Hill signed warrants for their arrests, charging "contempt of court." This was done without the request of the prosecutor. Judge Hill wrote "No" on the line for "Bond" (after the prosecutor said that contempt was not bondable). No hearing was held to determine. whether there was just cause for the victims' failure to appear, nor were they informed how to purge the contempt. Consequently, they spent a night in jail. On March 15, 1999, they appeared before Judge Hill, apologized, and the contempt charges were dismissed.

The mayor was impeached and removed from office on April 4, 1999. Article I of the Impeachment charged that the mayor terminated the police chief, without Board approval, on February 9, 1999. Judge Hill, on his truck, displayed a bumper sticker, "Impeach John L."

## II.

■ This Court has the ultimate responsibility to "remove, suspend, discipline or reprimand any judge of any court." *Mo. Const. art. V, sec 24.3.* This Court independently reviews the evidence and the Commission's fact findings. *In re Buford,* 577 S.W.2d 809, 813, 815, 817, 821 (Mo. banc 1979). Where credibility is at issue, this Court gives substantial consideration and due deference to the Commission's ability to judge the credibility of witnesses appearing before it. *In re Briggs,* 595 S.W.2d 270, 271, 273 (Mo. banc

1980). Because a disciplinary proceeding is civil rather than criminal, the charges must be proved by a preponderance of the evidence. *In re Elliston,* 789 S.W.2d 469, 472, 475 (Mo. banc 1990); *In re Duncan,* 541 S.W.2d 564, 569 (Mo. banc 1976). The Commission has jurisdiction of municipal judges. *In re Fullwood,* 518 S.W.2d 22, 23–24 (Mo. banc 1975).

## III.

The Commission found that Judge Hill's actions constituted three counts of misconduct, willful neglect of duty, and oppression in office, in violation of Article V, section 24.3 of the Constitution.

First, the Commission charges that the "open letter" was "an effort to advance the private interests of Police Chief Cooksey by using the prestige of Respondent's office," in violation of Rule 2, Canons 2 A and 2 B.

## A.

■ Judge Hill argues that the evidence does not establish the manner or capacity in which he signed the letter. In fact, the letter identifies the author as "Municipal Court Judge Ronald D. Hill." Judge Hill specifically writes about the relationship between the police chief and the "Court," referencing his position as municipal court judge.

Judge Hill asserts that his title could have been inserted by the newspaper. However, he offers no proof that the newspaper edited his letter, or that he retracted or corrected it. This Court finds that Judge Hill wrote the letter in his official capacity.

■ Judge Hill also disputes that the letter was written to advance a private interest. The Code of Judicial Conduct provides:

A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence

in the integrity and impartiality of the judiciary.

*Rule 2, canon 2 A.*

A judge shall not allow family, social, political or other relationships to influence the judge's judicial conduct or judgment. A judge shall not lend the prestige of judicial office to advance the private interests of the judge or others; nor shall a judge convey or permit others to convey the impression that they are in a special position to influence the judge....

*Rule 2, canon 2 B.* A finding of pecuniary gain by the judge is not required. The "private interest" advanced may be that of "others."

The open letter praises the police chief and urges the citizens of Potosi to support him. Undoubtedly, by the letter, Judge Hill meant to help the police chief keep his job in a political fight with the mayor.

Judge Hill did not testify before the Commission about the charges against him, or his motives for writing the letter. This Court derives his motivation and intent from the letter itself, and the surrounding circumstances. The finding of lending his judicial office is supported by the evidence.

### B.

Judge Hill invokes the exception for reference letters based on personal familiarity. True, "a judge may, based on the judge's personal knowledge, serve as a reference or provide a letter of recommendation." *Rule 2, canon 2 B (commentary).* However, this authority is preconditioned on the concept that "a judge should be sensitive to possible abuse of prestige of office." *Id.* Writing a private letter of recommendation is not the same as publishing an "open letter" in the local newspaper on an executive-branch dispute.

Judge Hill cites this Court's holding in the *Buford* case. There, a circuit judge wrote an insurance adjuster on court stationery about the judge's claim for personal injury and property damage. This Court held that Judge Buford did not exploit his judicial position contrary to the rules on judicial conduct. *Buford,* 577 S.W.2d at 831, 857, 859, 860.

Judge Hill ignores *Buford*'s context. This Court stated that the judge's use of his stationery added nothing to the claim because the adjuster testified that the letter could have been on any kind of stationery, as he already knew who Judge Buford was. *Buford,* 577 S.W.2d at 830. The *Buford* holding is limited to its facts and therefore does not aid Judge Hill.

### C.

Judge Hill argues that Rule 2, Canons 2 A and 2 B, are unconstitutionally vague and therefore void under Article I, section 10 of the Constitution. He objects that the phrases — "act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary" in Canon 2 A and "lend the prestige of judicial office to advance the private interest of the judge or others" in Canon 2 B — do not give adequate notice of proscribed conduct and do not protect against arbitrary enforcement.

The test for determining whether the Canons are vague is whether they convey to a judge a sufficiently definite warning of the proscribed conduct when measured by common understanding and practice. *See Cocktail Fortune v. Supervisor of Liquor Control,* 994 S.W.2d 955, 957 (Mo. banc 1999). Canons 2 A and 2 B warn of the general conduct prohibited. Neither absolute certainty nor impossible standards of specificity are required. *See State v. Duggar,* 806 S.W.2d 407, 408 (Mo. banc 1991). This is especially true in judicial discipline, where the purpose is "not to punish criminal conduct, but rather to maintain standards of judicial fitness." *In re Storie,* 574 S.W.2d 369, 373 (Mo. banc 1978). *See generally State ex rel. Nixon v. Telco Directory Pub.,* 863 S.W.2d 596, 600 (Mo. banc 1993).

■ As for the protection against arbitrary enforcement, violations of the Canons are only "evidence of misconduct." *In re Kohn*, 568 S.W.2d 255, 257 (Mo. banc 1978). Ultimately, this Court must find that the judge violated a constitutional standard – here misconduct, willful neglect of duty, and oppression in office – before discipline is imposed. *See In re Baber*, 847 S.W.2d 800, 806 (Mo. banc 1993).

In this case, Judge Hill clearly violated Canons 2 A and 2 B, and the Constitution. Writing an "open letter" as a judge, imploring citizens to support the police chief in his struggle with the mayor, does not promote public confidence in the judiciary and does lend the prestige of judicial office.

■ Judge Hill claims a confusing conflict with Canon 4, which encourages judges to speak, lecture, teach and participate in other extrajudicial activities concerning the law, the legal system, the administration of justice and nonlegal subjects. However, he ignores that Canon 4 is subject to the other requirements of Canons 2 A and 2 B:

> A judge may speak, write, lecture, teach and participate in other extrajudicial activities *concerning the law, the legal system, the administration of justice and nonlegal subjects, subject to the requirement of this Rule 2.*

*Rule 2, canon 4 B; see also canon 4 A*

### D.

■ Judge Hill calls his open letter "a political commentary relating to the operation of the Potosi police department." Citing the *Voorhees* and *Conard* cases, he claims that the open letter is free speech protected by Article I, section 8, of the Constitution.

In *Voorhees*, this Court noted that distribution of protest "don't care" pills among court staff "arguably" was protected by the First Amendment, where the

incident was not reported publicly and did not interfere with the administration of justice. *In re Voorhees*, 739 S.W.2d 178, 187–88 (Mo. banc 1987). Here, Judge Hill published an open letter advocating for one side of a political debate in the local newspaper. Such acts weaken public confidence in the judiciary and therefore adversely affect the administration of justice.

In *Conard*, this Court held that a judge who is publicly attacked may respond in a moderate, dignified, and proportionate manner. *In re Conard*, 944 S.W.2d 191, 204 (Mo. banc 1997). Here, Judge Hill was not responding to a public attack, so *Conard* is inapplicable.

The Code of Judicial Conduct balances a judge's right to free speech with the state's compelling interest in a judiciary that maintains public confidence and impartiality. *See In re Westfall*, 808 S.W.2d 829, 833 (Mo. banc 1991); *cf. Scott v. Flowers*, 910 F.2d 201 (5th Cir.1990); *In re Schenck*, 318 Or. 402, 870 P.2d 185, 203–06, *cert. denied*, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994). Disciplining Judge Hill for backing one side in an executive-branch dispute does not unconstitutionally abridge his right to free speech.

### IV.

■ Second, the Commission charges that the orders of April 24 were an "effort to use Respondent's office for his private gain," were "unfaithful and disrespectful to the law," and "excluded judicial discretion" – in violation of Rule 2, Canons 1, 2 A, 2 B, 3 A(1).[2]

The Commission concluded that Judge Hill ordered the blanket reduction in fines and release of prisoners, in order to compel the payment of his health insurance. He specifically denies doing so.

No evidence supports Judge Hill's claim. Because he did not testify, this Court must

---

**2.** Renumbered 3 B(2), January 1, 1999: "A judge shall be faithful to the law and maintain professional competence in it. A judge shall

not be swayed by partisan interests, public clamor or fear of criticism."

examine the facts and circumstances to determine his motive. *See Bean v. Riddle,* 423 S.W.2d 709, 720 (Mo.1968).

The presiding Circuit Judge testified that *before* Judge Hill's April 24 orders, they spoke at least once about the dispute over health insurance. On April 28 – while the orders were in effect—Judge Hill paid $260 to avoid a lapse in his health insurance.

Judge Hill's counsel implies that he reduced fines for "non-violent" offenses only. To the contrary, offenders received $1 fines for assault, assault on a police officer, resisting arrest, and driving while revoked.

Judge Hill asserts a variety of alleged justifications: reducing his caseload, better controlling his docket, avoiding congestion in the courts, exercising his discretion over fine schedules and prisoner releases, and responding to public and aldermanic complaints about the amount of fines. None of Judge Hill's assertions have any support in the record.

The police chief did testify that the orders were "nothing out of the ordinary." However, the chief conceded that such blanket orders had never occurred before, and Judge Hill did not consider specific offenders and specific charges in implementing the blanket orders. In view of all the facts and circumstances in April–May 1998 in Potosi, this Court finds that Judge Hill issued his orders in order to influence the city on his health insurance.

## V.

■ Third, the Commission charges that Judge Hill did not recuse when his impartiality was reasonably questioned, when he ordered the arrest of the mayor's daughter and her boyfriend without bond, notice, or hearing on a charge of contempt—in violation of Rule 2, Canons 1, 2 A, 2 B, 3 A(1), 3 A(3), and 3 D(1).[3]

Judge Hill contends that he did not know that the subject of his arrest warrant was the mayor's daughter. Judge Hill's contention is not credible.

Potosi is a small town,[4] and the mayor's daughter and Judge Hill had spoken "on many occasions" over the last ten years. The Judge's clerk (and only witness) went to school with her friend, the mayor's daughter. Judge Hill presided over the "apology" appearance by the mayor's daughter long after his supporters (the chief and clerk) had told him that she was the defendant. Significantly, Judge Hill had "offered or used" contempt only three times in his previous 17 years as a judge.

The various relationships between the mayor and Judge Hill required that the Judge recuse in any case involving the mayor or his family.

## VI.

■ The Commission recommends that Judge Hill's misconduct, willful neglect of duty, and oppression in office warrant his removal from office. The Commission acknowledges that Judge Hill has not been the subject of prior complaints in over 17 years as a municipal judge.

Judge Hill is suspended, without pay, for the rest of his term as municipal judge.

All concur.

---

**3.** 3 A(1)[renumbered 3 B(2), January 1, 1999], 3 A(3)[renumbered 3 B(4), January 1, 1999] and 3 D(1)[renumbered 3 E(1), January 1, 1999]: "A judge shall recuse in a proceeding in which the judge's impartiality might reasonably be questioned...."

**4.** The population of Potosi was 2,683 in 1990. *1999–2000 Official Manual 821; sec. 490.700 RSMo 1994.*

## OPEN LETTER

OPEN LETTER-
TO THE CITIZENS OF POTOSI

During the recent election campaign for city officials in the city of Potosi and since we have a new Mayor in Potosi the question of the integrity of Police Chief Don Cooksey seems to have come into question. I do not know why some candidates chose to run a campaign to destroy this man's reputation as Police Chief but, I for one do not intend to stand on the sidelines and say nothing.

While I have nothing to say or do with the internal workings of the Police Department I can still say this, Since Don Cooksey was hired as the Chief of Police in May of 1990 there have been many changes for the good, as far as law enforcement is concerned. He has run the department with professionalism, principles, honor and morality, qualities lacking under former leadership.

While on occasion Chief Cooksey and I do not always see eye to eye on some matters between the Police Department and the Court, we have always had enough respect for each other to discuss these differences in a professional manner and not let pettiness, gossip and innuendo influence our opinions of each other's decisions. We make an effort to work out problems that arise and try to do what is best for the community that has place its trust in us to do what you, the citizens of this city, have a right to expect.

So far Mayor Boyer hasn't been capable of coming up with anything that reflects badly on the character of Chief Cooksey. It is my opinion that he will not be able to do so in the future and I ask the people of Potosi to support the Chief and his efforts. You may do so by contacting him by mail or telephone and let him know that you support his efforts to run an efficient Police Department. And at the same time, please contact your Alderman and the Mayor and tell them that you support Chief Cooksey. As our new Mayor stated at the first meeting of the new city council, "Speak up - this is America!"

Municipal Court Judge
Ronald D. Hill
Typeset by DJS-18

COMMITTEE PEOPLE
ELECTED AT PRIMARY