EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |
|---|---|
| In re:<br><br>César Almodóvar Marchany<br>Juez Superior<br>Tribunal de Primera Instancia<br>Sala Superior de Carolina | 2006 TSPR 46<br><br>167 DPR \_\_\_\_ |

Número del Caso: AD-2004-4

Fecha: 30 de marzo de 2006

Oficina de Administración de los Tribunales:

Lcda. Nilsa Luz García Cabrera

Abogado de la Parte Querellada:

Lcdo. José E. Ayoroa Santaliz

Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re

| | | |
|---|---|---|
| César Almodóvar Marchany | | |
| Juez Superior | AD-2004-4 | Conducta |
| Tribunal de Primera Instancia | | Profesional |
| Sala Superior de Carolina | | |

PER CURIAM

San Juan, Puerto Rico a 30 de marzo de 2006.

I.

Tenemos ante nuestra consideración una controversia sobre la cual no nos hemos expresado. ¿Está un juez asignado a una sala de relaciones de familia impedido por razones éticas de enviar al Departamento de la Familia una carta de recomendación, identificándose como juez, en papel oficial del Tribunal General de Justicia, para expresarse sobre las cualificaciones de una persona cuyo hogar está ante la consideración de dicha agencia como posible hogar de crianza?

II.

La Comisión de Disciplina Judicial imputó al juez César Almodóvar Marchany cuatro cargos por

alegada violación a los Cánones de Ética Judicial de 1977.[1] La conducta específica consistió en redactar y enviar una carta de recomendación en papel oficial de la Rama Judicial en la que se expresó favorablemente sobre las cualificaciones personales de la Hon. Maritza Ramos Mercado, compañera jueza de Almodóvar Marchany, en ocasión del proceso administrativo en el que se evaluaba si el hogar de Ramos Mercado podría ser certificado como hogar de crianza por el Departamento de la Familia. Almodóvar Marchany remitió la carta a petición de la jueza Ramos Mercado. En ella se identificó como Juez Superior asignado a una Sala de Relaciones de Familia, y la dirigió sólo "A quien pueda interesar".[2]

---

[1] La conducta imputada como éticamente impropia ocurrió antes de la vigencia de los Cánones de Ética Judicial de 2005.

[2] El texto de la carta es esencialmente el siguiente:

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
CENTRO JUDICIAL _____
_____ Puerto Rico

27 de agosto de 2003

A quien pueda interesar:

Sirva la presente para testimoniar el hecho de que el suscribiente conoce hace varios años al matrimonio constituido por el Ing. José Rodríguez Quiñones y la Lcda. Maritza Ramos Mercado, residentes en la calle 2 #62-B, Urb. La Campiña, Río Piedras, Puerto Rico.

El primero funge como Presidente Corporativo de una firma farmacéutica en Puerto Rico, y la segunda es Juez de Primera Instancia en el Tribunal Superior, Sala de Carolina.

La Comisión de Disciplina imputó a Almodóvar Marchany haber violado los cánones I, XXI, XXIII, XXIV y XXVI de los de Ética Judicial.[3] Específicamente, éstos le

_____

Ambos son personas de absoluta integridad personal y de intachable reputación en la comunidad; personas de grandes dotes morales y cristianas.

[…].
Me complace recomendar personalmente al matrimonio Rodríguez-Ramos no solo como excelentes jóvenes profesionales, responsables y respetuosos de la ley y el orden, sino como personas dignas, nobles y de una calidad humana excepcional.

Cordialmente,


Firmado
César J. Almodóvar Marchany
Juez Superior
Sala Relaciones de Familia
Región Judicial, Carolina

[3] Estos cánones disponen lo siguiente:

Canon I

La fe de un pueblo en la justicia, como valor esencial de la democracia, debe ser mantenida por los tribunales a los más altos niveles de la responsabilidad pública.

En el ejercicio de su delicada función, aquellas personas llamadas a impartir justicia, conscientes de la posición que ocupan en la sociedad y de la trascendencia de su misión, deben velar por que sus actuaciones respondan a normas de conducta que honren la integridad e independencia de su ministerio y estimulen el respeto y la confianza en la Judicatura.

Canon XXI

El Juez o la Jueza no debe utilizar su poder o el prestigio de su cargo para fomentar el éxito de negocios privados o para su beneficio personal. Tampoco debe tener relaciones de negocios que en el curso normal de acontecimientos razonablemente previsibles puedan poner sus intereses personales en conflicto con el cumplimiento de sus deberes. La participación de cualquier juez en negocios privados que no aparejen tales conflictos de intereses debe realizarse con la mayor cautela y prudencia a fin de evitar malas impresiones o la apariencia de conducta impropia. El Juez o la Jueza debe

imponen el deber ético de actuar de modo que su conducta

_____

evitar particularmente dar base para la sospecha razonable de que pueda estar utilizando las prerrogativas o influencias de su cargo para su beneficio personal o el de otras personas.

El Juez o la Jueza no debe realizar gestión alguna ni permitir el uso de su nombre para recolectar fondos, no importa el propósito o destino de éstos. Dicha prohibición incluye solicitar donativos o aportaciones de personas o entidades para el Colegio de Abogados de Puerto Rico o para organizaciones cívicas, benéficas, profesionales o de cualquier otra índole.

Canon XXIII

El Juez o la Jueza debe evitar toda conducta o actuación que pueda dar base a la creencia de que ejerce o pretende ejercer influencia indebida en el ánimo de otro Juez o Jueza en la consideración de un caso pendiente o futuro. El Juez o la Jueza no debe influir ni directa ni indirectamente, para conseguir colocarse en mejor situación que cualquier otro ciudadano o ciudadana en el litigio de sus causas personales.

El Juez o la Jueza no debe dar la impresión ni permitir que otros den la impresión al efecto de que éstos puedan tener alguna influencia sobre aquél o aquélla.

El Juez o la Jueza no debe prestar testimonio por iniciativa propia como testigo de reputación.

Canon XXIV

No es necesario ni deseable que la Jueza o el Juez viva en el aislamiento. Sin embargo, ha de ser escrupuloso en evitar actuaciones que razonablemente puedan dar lugar a la impresión de que sus relaciones sociales, de negocios, de familia o de amistad influyen en alguna forma en sus determinaciones judiciales.
[…].

Canon XXVI

Los anteriores Cánones de Ética Judicial son normas mínimas de comportamiento que todo Juez y toda Jueza debe observar fielmente, tanto en su letra como en su espíritu, por ser consustanciales con el cargo judicial. Estos cánones no excluyen otras normas de conducta que también obligan al Juez y a la Jueza, que están establecidas por ley o que son inherentes al honor tradicional de la judicatura. 4 L.P.R.A. Ap. IV-A.

honre la integridad e independencia de su ministerio y estimulen la confianza en la judicatura (Canon I y XXVI); el deber de evitar usar o dar la apariencia de que usa el prestigio de su cargo para beneficio personal o el de terceras personas (Canon XXI); el deber de evitar dar la impresión de que ejerce o pretende ejercer influencia en otros jueces al prestar, entre otras cosas, testimonio de reputación, (Canon XXIII); y el deber de evitar dar la impresión de que sus gestiones de negocios, personales o familiares influyen en su gestión profesional o en sus determinaciones judiciales (Canon XXIV).

Tras los trámites correspondientes ante la Comisión de Disciplina, ésta rindió su Informe. En éste concluyó que las violaciones imputadas fueron cometidas y nos recomendó que disciplináramos a Almodóvar Marchany con una amonestación. Al hacerlo, la Comisión expresó lo siguiente:

> El Juez Almodóvar Marchany debió ser prudente y evitar toda conducta dirigida a adelantar los intereses de la Jueza Ramos Mercado, ya que su actuación aparentó estar encaminada a beneficiarla desde su posición como Juez Superior. […].
>
> **No podemos ignorar que siendo el Juez Almodóvar Marchany, en aquel momento, un Juez asignado a una Sala de Relaciones de Familia, con toda probabilidad había atendido casos en los que el Departamento de la Familia era parte, por lo que resulta impropio que éste emitiera una carta de recomendación que sería utilizada para evaluar una solicitud de certificación de hogar sustituto, por lo que funcionarios del Departamento de la Familia tendrían que evaluar la credibilidad de su declaración.** No nos convence el planteamiento del Juez

> Almodóvar Marchany a los fines de intentar establecer que su carta dirigida "A quien pueda interesar" no hace solicitud alguna para beneficiar a la Jueza Ramos Mercado. Informe de la Comisión de Disciplina Judicial, en la pág. 13 (énfasis suplido).

Tras evaluar el Informe de la Comisión, los distintos documentos que obran en el expediente del caso, así como las normas éticas aplicables, resolvemos.

### III.

### A.

Los Cánones de Ética Judicial de 1977, aplicables a la controversia, y los vigentes del 2005,[4] carecen de una disposición que expresamente prohíba que los jueces y juezas envíen cartas de recomendación en papel timbrado de la Rama Judicial a favor de terceras personas. Cualquier prohibición ética al respecto surgiría de los deberes éticos implícitos en los cánones, pues, como se sabe, éstos sólo constituyen normas mínimas de conducta. *In re: González Acevedo y Pagán Pagán*, res. 20 de junio de 2005; 2005 T.S.P.R. 87; 164 D.P.R. __ (2005).

La Comisión resolvió que tal prohibición ética se deriva de los cánones I, XXI, XXIII, XXIV y XXVI de los de Ética Judicial, que procuran, entre otras cosas, estimular la confianza de la ciudadanía en la judicatura evitando que los jueces obtengan o den la apariencia de que obtienen beneficios personales para sí o para terceros usando el prestigio de su cargo, o que influyan

---

[4] *In re, Aprobación de Cánones de Ética Judicial de 2005*, res. 5 de abril de 2005; 2005 TSPR 39; 163 DPR ___ (2005).

o den la apariencia de que influyen en otros procesos, y en la disposición que impide a un Juez brindar testimonio de reputación a favor de una parte.

En Puerto Rico carecemos de pronunciamientos previos de este Tribunal en cuanto a la controversia que nos ocupa. Debemos, pues, para fines ilustrativos, examinar el trato brindado en otras jurisdicciones a controversias similares de modo que podamos perfilar algunas tendencias que puedan guiarnos en la resolución de la presente querella. De entrada, destacamos que el acercamiento al problema ha tenido principalmente dos vertientes. Por un lado, se ha considerado si los jueces pueden recomendar a trabajos o a programas académicos a personas con quienes tienen vínculos profesionales. Por otro lado, se ha evaluado si los jueces están impedidos por razones éticas de formular recomendaciones en procesos investigativos o adjudicativos. Examinemos ambos aspectos.

B.

En otras jurisdicciones se han atendido estas controversias, en ocasiones mediante comentarios específicos en los códigos de ética, en otras mediante procedimientos disciplinarios como el presente, y aún en otras a través de los Comités Consultivos de Ética Judicial, los que han abordado el tema de modo más frecuente[5]. En muchas jurisdicciones no se prohíbe que

---

[5] Los Comités Consultivos de Ética Judicial ("advisory committes") son organismos asesores que existen en otras jurisdicciones para orientar a los

los jueces redacten y envíen cartas recomendando favorablemente a personas con las que han tenido una relación profesional o de trabajo para empleos o para programas de estudios universitarios. Sin embargo, en tales casos, la carta de recomendación debe contener hechos que consten personalmente al magistrado. *In re; Code of Judicial Conduct*, 643 So.2d 1037 (Fla. 1994); *In re; Hill*, 8 Sw.3d 578 (Mo. 2000); véanse además, *Comisión de Ética Judicial de Massachusets*, Opinión Núm. 97-2, 15 de abril de 1997.

A tenor con ello, algunas jurisdicciones, como el estado de Florida, han prohibido a los jueces usar papel timbrado oficial en el manejo de asuntos personales, salvo que se trate de una carta de recomendación basada en el conocimiento personal del juez sobre la persona recomendada. *In re; Code of Judicial Conduct*, *supra*.

De igual modo, parece haber consenso en otras jurisdicciones en que las cartas deben ir dirigidas a una persona en específico en lugar de ser documentos genéricos que usen expresiones como "a quien pueda interesar". Esta última restricción procura evitar que una carta de recomendación pueda ser remitida por una tercera persona y sin el consentimiento del juez a una persona con quien éste deba evitar comunicarse, como lo sería una parte o un abogado que litiga ante su sala.

---

miembros de la judicatura sobre aspectos éticos. Emiten opiniones sobre controversias que los jueces y juezas formulan en relación con posible conducta futura.

También protege al juez de una imputación infundada respecto al destinatario del documento.

Se ha destacado, además, que un juez no debe enviar una carta de recomendación a una persona o foro sobre el cual tenga, por el cargo que ocupa, algún tipo de control, Opinión consultiva de Nuevo México, 1990-3. Por ello, resulta importante que el juez o jueza evalúe la relación entre el Poder Judicial y el posible destinatario, de modo que se evite comprometer la imagen de imparcialidad o la confianza pública en la judicatura, Opinión Consultiva de Maine, 1998-3. Asimismo, se ha expresado que no es apropiado que un juez envíe una carta de recomendación si existe la posibilidad de que ésta se haga pública, Opinión Consultiva de New Mexico, 1990-3; o si el juez pudiera resultar beneficiado en alguna forma. Id. Véase, Cynthia Gray, Key Issues in Judicial Ethics, *Recomendations by Judges* (American Judicature Society, 2000).

## C.

Por otro lado, existe consenso en la mayoría de las jurisdicciones en que resulta éticamente impropio que un juez envíe una carta de recomendación, por iniciativa propia o a petición de una parte, para expresarse sobre personas que están involucradas en procesos investigativos o administrativos. Se aduce que en esas circunstancias el envío de una carta pudiera constituir una intervención indebida a favor de terceras personas,

lo cual minaría considerablemente la imagen de imparcialidad de la judicatura y fomentaría la impresión de que el juez o jueza que envía la carta intenta usar su prestigio para gestionar un beneficio.

Por ejemplo, la Corte Suprema de Florida, acogiendo una recomendación del comité consultivo de esa jurisdicción, amonestó a un juez por haber enviado una carta a otro juez que estaba próximo a emitir sentencia en un caso penal para expresarse favorablemente de la persona a ser sentenciada. *In re Judge Abel*, 632 So. 2d 600 (Fla. 1994). Ante hechos similares, la Corte Suprema de Louisiana también concluyó que tal gestión era éticamente impropia. *In re: Marullo*, 692 So.2d 1019 (1997).

Los Comités Consultivos de Ética Judicial de variadas jurisdicciones han formulado recomendaciones ilustrativas al respecto. Por ejemplo, el Comité Consultivo de Ética Judicial del estado de Kansas ha expresado que es impropio que un juez remita una carta de recomendación a una junta probatoria para abogar por la excarcelación de un convicto que anteriormente había sido cliente del juez. *Comité Consultivo de Kansas*, Opinión 103, 15 de noviembre de 2000.

Consecuente con esa apreciación, el Comité Consultivo de Ética Judicial del estado de Florida ha adoptado como norma general que, aunque pueden escribir cartas de recomendación, los jueces no pueden redactarlas

o enviarlas por iniciativa propia cuando las personas a favor de quienes las hacen están involucradas en procedimientos investigativos o adjudicativos en los que se están determinando sus derechos, responsabilidades o privilegios. *Comité Consultivo de Florida*, Opinión 82-15 29 de octubre de 1982. Esta norma excluye la situación en que un Juez envía una carta o documento en respuesta a una petición oficial de información.

El Comité Consultivo de Florida también ha declarado éticamente impropio que un Juez prepare por iniciativa propia una carta recomendando la reinstalación de un abogado desaforado al ejercicio de la abogacía, *Comité Consultivo de Florida*, Opinión 88-19, 5 de octubre 5 de 1988; o que envíe cartas de recomendación en el contexto de procedimientos para la concesión del privilegio de probatoria, *Comité Consultivo de Florida*, Opinión 77-17, 15 de noviembre de 1977; *Comité Consultivo de Florida*, Opinión 75-22, 4 de agosto de 1975.

De igual modo, el Comité de Ética Judicial de Massachussets ha expresado que es éticamente impropio que un juez envíe una carta en la que se exprese sobre la reputación de un empleado judicial que es objeto de un proceso disciplinario, independientemente de que la comunicación no versara sobre los hechos específicos que motivaban el proceso. *Comité de Ética Judicial de Massachussets*, Opinión Núm. 2004-5; 20 de mayo de 2004. Específicamente, el Comité expresó que esa conclusión se

deriva de la disposición ética que impide que los jueces provean voluntariamente testimonio de reputación en procesos adjudicativos, los cuales, a juicio del Comité, incluyen tanto procesos judiciales como administrativos.

IV.

A.

Conforme a lo anterior, coincidimos con las jurisdicciones que han señalado que los jueces no están impedidos éticamente de enviar cartas para recomendar favorablemente a empleos o a programas académicos a personas con quienes tienen vínculos profesionales o de trabajo. En tales circunstancias, la opinión fundada y objetiva de un juez, emitida por escrito sobre la base de su conocimiento personal, carece de la mácula que originaría un conflicto ético. Primero, esta práctica es común en los escenarios laborales, especialmente en el contexto de las relaciones entre supervisor y supervisado. Vista desde esta perspectiva, declararla antiética implicaría penalizar a un empleado de la oportunidad de contar con una referencia o recomendación de su supervisor por el sólo hecho de que éste es juez. Segundo, es una gestión que no suele tener trascendencia pública, pues tiene el limitado objetivo de expresar a un destinatario determinado las cualificaciones profesionales de una persona. Finalmente, es una práctica que no suele darse en el contexto de procesos adversativos o adjudicativos.

Sin embargo, como en el contexto del ejercicio de cualquier otra gestión válida, los jueces deben ser cautelosos y prudentes. Por ello, consideramos y así lo resolvemos, que las cartas de recomendación de este tipo que envíen los jueces deben estar basadas en hechos que consten a éstos de propio conocimiento. Deben, además, dirigirse a un destinatario específico, de modo que se evite la posibilidad de que se le dé un uso no previsto.

Finalmente, los jueces deben evitar dar la impresión de que la recomendación constituye una opinión oficial o institucional de la Rama Judicial, particularmente si usan papel timbrado que los identifica como jueces o juezas.

### B.

Por otro lado, somos del criterio que es éticamente impropio que un juez o jueza envíe una carta en la que se exprese favorable o desfavorablemente sobre una persona que tenga formulada una petición o reclamación ante una entidad pública o privada, o cuyos derechos, responsabilidades o privilegios sean objeto de análisis en un proceso investigativo o adjudicativo. Los jueces son figuras que gozan de prestigio y autoridad en la sociedad, por lo que su intervención en tales procedimientos, aún mediante el mero envío de una carta, podría ser percibida como un intento de forzar un resultado a base del juicio del juez o de la jueza. Pues, como hemos expresado antes, "en nuestra sociedad el cargo

de juez es un cargo especial que proyecta una visión y noción pública destacada, de prestigio e influencia". *In re: Comunicación del Hon. Juez Pérez Jiménez*, 112 D.P.R. 683, 685 (1982). *Véanse además*, I*nquiry Concerning a Judge*, 822 P.2d 1333 (Alaska 1991); *In re Doe*, 679 So. 2d 900 (La. 1996); *In re Gallagher*, 951 P.2d 705 (Or. 1998); *In re Samay*, 764 A. 2d 398 (N.J. 2001).

En particular, conforme a la querella presentada, dicha incompatibilidad ética surge de los Cánones números I, XXI, XXIII y XXVI de 1977 que requieren a los jueces y juezas honrar con su conducta la integridad e independencia de su ministerio y estimular la confianza en la judicatura (Canon I y XXVI), y procuran que los jueces eviten usar o dar la apariencia de que usan el prestigio de su cargo para beneficio personal o el de terceras personas (Canon XXI). En la medida en que la carta de recomendación se envía a un foro adjudicativo con el objetivo de referirse a la reputación de un tercero, estaría implicada la norma ética que prohíbe a los jueces dar la impresión de que ejercen o pretenden ejercer influencia en otros jueces al prestar voluntariamente testimonio de reputación, (Canon XXIII).[6]

Los cánones procuran mantener la imagen de dignidad y decoro de la judicatura, evitando que la ciudadanía desconfíe de sus integrantes por creer que utilizan su posición para obtener favores o privilegios para sí o

---

[6] De los cánones del 2005 véanse los cánones 2, 29, 30, 31 y 36.

para otras personas. Este objetivo cobra mayor importancia en el contexto de procesos investigativos y administrativos, en los que debe evitarse que los jueces y juezas se perciban como entes al margen de la ley, que usan indebidamente sus influencias para promover resultados específicos ante diversos foros, y a quienes se exceptúa, por razón de su cargo, de los trámites que ordinariamente tiene que seguir la ciudadanía en general.

El prestigio del cargo de juez no es un activo que deba ser usado para gestionar privilegios o concesiones que de otro modo no hubieran podido obtenerse. El prestigio del cargo, y la reputación bien ganada, sólo pueden ser carta de presentación en el ejercicio de las funciones judiciales.

Por ello, los jueces debemos ser cuidadosos y prudentes en el manejo de asuntos ajenos a la función judicial, evitando crear la apariencia de que se usa el título de juez como instrumento de intimidación o para imprimir mayor peso a nuestros reclamos personales. De ahí se deriva la disposición de nuestros cánones que expresamente prohíbe a un juez comparecer por iniciativa propia a un proceso judicial como testigo de reputación y nuestros pronunciamientos en el contexto de la presente querella.

C.

Por otro lado, contrario al criterio de la Comisión, nos parece que las normas éticas hoy adoptadas no se

derivan de lo dispuesto en el Canon XXIV de los de Ética Judicial, preceptivo de que los jueces deben "ser escrupuloso[s] en evitar actuaciones que razonablemente puedan dar lugar a la impresión de que sus relaciones sociales, de negocios, de familia o de amistad influyen en alguna forma en sus determinaciones judiciales". 4 L.P.R.A. Ap. IV-A C. XXIV. Los deberes éticos dimanantes de este canon se enmarcan fundamentalmente en el deber de los jueces y juezas de comportarse públicamente de forma decorosa evitando involucrarse en actividades que pudieran afectar su imagen de imparcialidad en el desempeño de sus funciones judiciales.

De este modo, el canon impone sobre los jueces y juezas el deber ético de "evitar incluso la mera apariencia de que su conducta está parcializada a favor de una parte por consideraciones de amistad, parentesco o algún interés personal". *In re, Yamil Suárez Marchand*, 30 de junio de 2003; 2003 T.S.P.R. 115; 159 D.P.R. ___ (2003) (énfasis suprimido). Aplicarlo supone, pues, que la actuación del Juez o Jueza incide sobre su desempeño en algún proceso que esté o pudiera razonablemente estar ante su consideración.

La querella contra el juez Almodóvar Marchany imputa esencialmente que ha usado o ha aparentado usar el prestigio de su cargo para beneficiar a una tercera persona y que pretendió o aparentó influir en un proceso administrativo en el que no tiene poder o autoridad

decisoria inmediata. El envío de la carta de recomendación, en el contexto de la presente querella, no nos parece que viole los deberes derivados del canon XXIV.

Aclarado lo anterior, y con el marco normativo previamente expuesto, evaluemos los hechos del caso.

V.

En el presente caso nos encontramos ante un juez que redactó y remitió una carta de recomendación dirigida genéricamente "A quien pueda interesar". La carta, sin embargo, fue redactada con la clara intención de que fuera usada como una recomendación favorable en un proceso en el que se evaluaba la aptitud del hogar de la Jueza Maritza Ramos Mercado para ser certificado como hogar de crianza por el Departamento de la Familia, conforme a una petición en la que Ramos Mercado figuraba como parte promovente. Por ello, contenía expresiones que elogiaban la reputación profesional y personal de la jueza Ramos Mercado y de su esposo. La carta fue redactada en papel timbrado de la Rama Judicial y el juez remitente, al firmarla, se identificó como Juez Superior asignado a una Sala de Relaciones de Familia.

Al evaluar el *Reglamento para el Licenciamiento y Supervisión De Hogares de Crianza* del Departamento de la Familia, notamos que el procedimiento para la obtención de una licencia para operar un hogar de

crianza reúne características tanto de un proceso investigativo como de uno adjudicativo.

El procedimiento comienza con la presentación de una solicitud en el Departamento de la Familia. Tan pronto se presenta la solicitud se inicia un proceso investigativo con el fin de evaluar la aptitud del hogar del solicitante para ser un hogar de crianza. Al respecto, el reglamento contempla que "[e]l hogar de crianza se someterá a un estudio social completo que evidencie la capacidad de la madre o el padre de crianza para ejercer dicho rol de manera efectiva". Sección 4.1. El reglamento dispone, además, múltiples condiciones que deberán satisfacer los integrantes del núcleo familiar. De igual modo, la residencia deberá satisfacer ciertas condiciones mínimas para salvaguardar el bienestar del menor o los menores que habrán de vivir allí. El Departamento de la Familia supervisará rigurosamente el cumplimiento con los requisitos pautados.

Finalmente, el reglamento establece un procedimiento que permite apelar de una denegatoria, suspensión o cancelación de una licencia para operar un hogar de crianza. Al respecto, expresa la sección 14.2 del referido reglamento:

> La notificación de la denegación, suspensión o cancelación de licencia se hará por escrito, con acuse de recibo, al solicitante a su dirección, según consta en el expediente de licenciamiento, señalando las razones para denegar,

suspender o cancelar la licencia y contendrá el derecho a apelar la decisión, según [la] Sección 15.2 de este Reglamento. Reglamento 6476, *Reglamento para el Licenciamiento y Supervisión De Hogares de Crianza,* Sección 14.2 (2002).

Añade la sección 14.3:

Derecho de Apelación. Todo poseedor o solicitante de licencia tendrá derecho a apelar la decisión de la/del Secretaria/o cancelando, suspendiendo o denegando una licencia ante la Junta Adjudicativa del Departamento de la Familia, según dispuesto en la Ley Número 87, aprobada el 14 de septiembre de 1990, en el término dispuesto en el Artículo VII del Reglamento 5431, Para Establecer los Procedimientos de Adjudicación. *Id.,* Sección 14.3.

Como puede apreciarse, el procedimiento para obtener una licencia para operar un hogar de crianza contiene elementos tanto de un proceso investigativo como de un proceso adjudicativo. El juez Almodóvar Marchany, por su vínculo con las salas de relaciones de familia, debió conocerlo, por lo que debió ejercer un grado de prudencia mayor. Su intervención en dicho proceso mediante el envío de una carta de recomendación a favor de la parte promovente, sumado al hecho de que usó papel timbrado oficial de la Rama Judicial y se indentifió como Juez Superior a cargo de una Sala de Relaciones de Familia, --sala a la que comparecen con frecuencia funcionarios del Departamento de la Familia--, nos mueve a concluir que su actuación fue éticamente imprudente. Coincidimos, pues, con el criterio de la Comisión de Disciplina Judicial en que tal intervención, por mínima que fuera, constituyó

una gestión reñida con el espíritu de los principios rectores de los Cánones de Ética Judicial, ya que aparentaba ser un intento de usar el prestigio de su cargo para ayudar a que la Jueza Ramos Mercado obtuviera un resultado favorable en un proceso investigativo ante el Departamento de la Familia.

Los Cánones de Ética Judicial números I, XXI, XXIII y XXVI procuran evitar este tipo de conducta al requerir a jueces y a juezas que su conducta honre la integridad e independencia de su ministerio y estimule la confianza en la judicatura (Canon I y XXVI); que eviten usar o dar la apariencia de que usan el prestigio de su cargo para beneficio personal o el de terceras personas (Canon XXI); y que eviten dar la impresión de que ejercen o pretenden ejercer influencia en otros jueces al prestar, entre otras cosas, testimonio de reputación, (Canon XXIII).

Éstas son, pues, normas que contribuyen a perfilar el juez ideal, el juez al que aspira la sociedad y al que los integrantes de la judicatura debemos mirar cuando nos preguntamos en nuestro entorno inmediato cuál es la conducta éticamente exigida. Véase, *In re: González Acevedo y Pagán Pagán*, supra. Lo éticamente exigido no puede nublarse por consideraciones motivadas por amistad o por la creencia personal, de buena fe, de que el criterio de un juez o jueza puede resultar útil en algún proceso investigativo o administrativo.

Finalmente, consideramos que como no nos habíamos expresado antes sobre esta controversia particular, y por el hecho de que el Juez Almodóvar Marchany no ha incurrido anteriormente en faltas éticas, no debemos imponer contra éste sanción disciplinaria alguna.

Tanto él como los demás integrantes de la Judicatura deberán ser conscientes, sin embargo, de que en lo sucesivo, velaremos estrictamente porque los deberes éticos establecidos en esta Opinión se cumplan celosamente.

Se emitirá sentencia de conformidad con lo expuesto en esta Opinión.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re

César Almodóvar Marchany
Juez Superior                          AD-2004-4          Conducta
Tribunal de Primera Instancia                             Profesional
Sala Superior de Carolina

SENTENCIA

San Juan, Puerto Rico a 30 de marzo de 2006.

Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte íntegra de la presente, resolvemos que la conducta imputada contra el Juez Superior César Almodóvar Marchany fue éticamente impropia. No obstante, en vista de que no existían claros pronunciamientos de este Tribunal sobre la controversia central de la presente querella, y de que el juez querellado no ha sido sancionado en el pasado por razones éticas, no impondremos en este caso sanción disciplinaria alguna.

En lo sucesivo, velaremos estrictamente porque los deberes éticos establecidos en esta Opinión se cumplan celosamente.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez no intervino.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo