STATE ex inf. John ASHCROFT, Attorney General, Relator,

v.

Terry C. ALEXANDER, County Clerk of Sullivan County, Respondent.

No. 64681.

Supreme Court of Missouri, En Banc.

July 17, 1984.

---

John Ashcroft, Atty. Gen., Bruce Farmer, Asst. Atty. Gen., Jefferson City, for relator.

L.E. Atherton, Milan, for respondent.

DONNELLY, Judge.

This is an original proceeding in the nature of *quo warranto* to oust the Respondent from the office of County Clerk of Sullivan County, Missouri. This Court has jurisdiction pursuant to the provisions of Mo. Const. art. V, § 4.

Respondent was elected to the office of County Clerk of Sullivan County, Missouri in November 1974, and was reelected in November 1978 and November 1982. The allegations of misconduct alleged in the information concern his actions during the term beginning January 1979 and ending December 31, 1982. The information was filed on December 30, 1982. On January 4, 1983, this Court issued its preliminary order in *quo warranto*. On March 7, 1983, the Honorable Frank Conley was appointed Master to take evidence and make findings

of fact and conclusions of law. On January 26, 1984, the Master's Report was filed, recommending that Relator's petition be denied.

■ The Master's findings of fact and conclusions of law constitute recommendations and are not binding on this Court. We find our own facts, draw our own conclusions, and make our own judgment. *State ex inf. Danforth v. Orton*, 465 S.W.2d 618, 620 (Mo. banc 1971). We are, however, persuaded by the Master's Report and substantially adopt his findings and conclusions.

■ Relator's information was in two counts, and alleged that Respondent had forfeited his office and willfully and fraudulently violated and neglected his official duties. The grounds on which evidence was adduced were: that Respondent had appointed as election judges relatives within the fourth degree of affinity in violation of the nepotism provisions of Mo. Const. art. VII, § 6; that he failed to appoint election judges from the list provided him by the major political parties of his county; that he failed properly to instruct election judges on voting procedures; that he failed to provide voting booths for use of voters in elections in Sullivan County; and that he failed to furnish ballot boxes that could be locked with a key as required by law. The burden of proof is upon Relator to prove his case by a preponderance of the evidence. *State ex inf. Connett v. Madget*, 297 S.W.2d 416, 427–28 (Mo. banc 1956). *See generally*, Comment, Quo Warranto in Missouri, 1972 Wash.U.L.Q. 751.

I. Nepotism Charges

The pleadings allege three separate appointments of relatives within the fourth degree of affinity to the position of election judge. Olive Alexander, Respondent's aunt within the third degree of affinity, is alleged to have been appointed supervising election judge and paid for such services on August 4, 1976, and September 1, 1979. Peggy Alexander, Respondent's first cousin within the fourth degree of affinity, is alleged to have been appointed an election judge and paid for her services on November 6, 1980.

■ The operative statute when the services of Olive Alexander were paid for on August 4, 1976, was § 111.320, RSMo 1969. That statute provided for the appointment of election judges by the county court. As there was no provision for appointment by the County Clerk, the charge of nepotism as to that appointment must fail.

■ The remaining two appointments, of Olive Alexander on September 1, 1979, and Peggy Alexander on or about November 1980, are governed by Chapter 115, RSMo 1978. Section 115.015 established the county clerk as election authority except in city or counties having a board of election commissioners. Section 115.079 states that "All election judges in each jurisdiction shall be appointed by the election authority." Section 115.095 provides that if an election judge should fail to appear at the time the polls are to open, another judge shall be appointed by "[t]he election authority or the election judges present in the polling place."

There is little question that Olive Alexander and Peggy Alexander did in fact serve as election judges on the dates specified. What is in dispute is whether Respondent appointed them. Respondent unequivocally denied that he made the appointments. Relator's evidence indicated that Respondent may have learned of the appointments after the fact in his review of the payroll. Some evidence suggested that these individuals may have acted as election judges on other occasions. On some of these occasions Olive or Peggy Alexander may have received checks totally approximately $4 more than the base pay for election judges which could be attributed to mileage for depositing the ballot boxes with the election authority. Respondent maintained a close family relationship with Olive and Peggy Alexander.

Under these facts, Relator failed to meet the burden of proving by a preponderance of the evidence that Respondent appointed Olive and Peggy Alexander. The facts

show that Respondent may have learned of the appointments after they were made, but do not establish that he, rather than other election judges, made the appointments.

■ Relator contends that the pleadings should be amended to conform to the undisputed evidence that the Alexanders were appointed election judges on dates additional to those alleged in the information. He argues that the pattern of appointment establishes that they occurred with the knowledge and at the direction of Respondent. Although pleadings in *quo warranto* actions may be amended to conform with the evidence, *State ex inf. Danforth v. Orton*, 465 S.W.2d at 622, Relator has again failed to establish that Respondent, and not the other election judges, made the appointments.

## II. Willful Neglect of Duty

Respondent is also charged with willful neglect of duty, including: (1) failure to select Republican judges for the November 2, 1982, election from the list selected by the Republican Central Committee; (2) failure to direct and inform election judges in their duties; (3) failure to provide voting booths at various precincts throughout Sullivan County; and (4) failure to provide padlocks for ballot boxes.

■ Evidence as to the first of these charges is unclear. Although a Republican judge list was submitted to Respondent by June Rhodes, the Republican Committee Chairperson for Sullivan County, in late 1980 or early 1981, and a revised list on October 13, 1980, the corrections, strike overs, substitutions, additions, and deletions make it uncertain who was on the list submitted and who actually served.

■ The evidence established that Respondent did in fact conduct meetings at which the elections laws were discussed with the various election judges prior to elections being held. Relator did not establish that Respondent failed to direct judges in their duties and compel their compliance with the law as set forth in § 115.099.

■ From the evidence adduced it appears that voting booths were not available in all precincts. In some, cardboard dividers were placed on a table, while in others no type of voting booth was present. However, it was also established that this condition had existed in Sullivan County for at least fifty years. Respondent has since made efforts to correct this situation. Under these facts, although Respondent violated § 115.411 in failing to provide voting booths for each polling place in Sullivan County for the November 2, 1982, election, it cannot be concluded that such violation was done willfully.

■ Evidence as to the availability of padlocks for ballot boxes varied from precinct to precinct. In some, padlocks were used, in others padlocks were available but not used, and perhaps in some padlocks were not available. However, when asked to replace padlocks, Respondent did secure replacements. Again, although Respondent may have violated § 115.423 by failing to provide election judges at each polling place with ballot boxes which may be locked and the key kept by one of the judges, there has been no showing that Respondent willfully violated these provisions or that he has been neglectful of his official duties in this regard.

Respondent asserts that this action is moot because the term during which the allegations of misconduct occurred expired on the day after the information was filed. He contends that he cannot be ousted from his present term for acts of misconduct in the preceding term. This Court has not yet found it necessary to decide whether an official can be ousted from his present term for misconduct and forfeiture occurring in a previous term. *See State ex inf. Danforth v. Orton*, 465 S.W.2d at 620–21. It is not necessary to decide the question here.

Relator has failed to show by a preponderance of the evidence that Respondent forfeited his office by acts of misconduct. Relator's petition is denied.

All concur.