

## SUPREME COURT OF MISSOURI
### en banc

| | | |
|---|---|---|
| IN RE: THE HONORABLE JOE DON MCGAUGH, | ) ) ) | *Opinion issued February 28, 2025* |
| | ) | No. SC100875 |
| Respondent. | ) | |

### ORIGINAL DISCIPLINARY PROCEEDING

The Commission on Retirement, Removal and Discipline recommends this Court suspend for six months without pay the Honorable Joe Don McGaugh based on judicial misconduct. After considering the Commission's findings of fact, conclusions of law, and recommendation, this Court suspends Judge McGaugh without pay for one year beginning March 1, 2025, with the monitoring the Commission recommends.

### Factual Background and Procedural History

Judge McGaugh is an associate circuit judge in Carroll County who has served since 2017. In August 2024, the Commission issued its notice to Judge McGaugh. The notice set out 12 counts alleging he violated multiple provisions of the Code of Judicial Conduct and his actions constitute misconduct and incompetency warranting discipline under article V, section 24.3 of the Missouri Constitution. Judge McGaugh admitted all allegations in his response and in a stipulation and waiver he submitted to the Commission. Those allegations are summarized below.

Count 1 alleged Judge McGaugh failed to rule timely in a dissolution of marriage case by taking the case under advisement in September 2021 but not entering judgment until 2024.[1] Between 2021 and 2024, counsel for both parties contacted Judge McGaugh multiple times to ask about the case status. In a February 2022 email, the wife's attorney stated Judge McGaugh told the attorney "a couple weeks ago in court that [Judge McGaugh] had given the Final Judgment to a clerk, however, the clerks cannot find it." In another email in 2022, the wife's attorney reminded Judge McGaugh the parties had submitted proposed judgments in September 2021 and informed Judge McGaugh the wife's mortgage was in default and she could lose her home in foreclosure without a judgment. From February 2023 through January 2024, the husband's attorney filed a motion for inquiry on the status of the judgment and a motion and notice for status conference, and the wife's attorney filed a motion for entry of judgment.

The Commission also contacted Judge McGaugh multiple times after receiving a complaint about the ongoing delays. In October 2022, the Commission asked about the delay and noted Judge McGaugh had not reported the case in a required report of all cases he had under advisement for more than 90 days.[2] Judge McGaugh admitted to the delay and "oversight" in failing to include the case in the 90-day list but stated "[t]he

---

[1] The Commission's notice stated Judge McGaugh "ruled April 4, 2024." The electronic case record, however, reflects Judge McGaugh entered judgment February 16, 2024, and entered judgment *nunc pro tunc* February 21, 2024.

[2] "Twice a year, all circuit court judges, associate circuit court judges, commissioners, and senior judges shall complete and submit a survey of cases under advisement 90 days or more." Supreme Court Operating Rule 17.46. All rule references are to Missouri Court Rules (2024).

Judgment has been submitted to the Ray County Circuit Clerk," and he had "made efforts with [his] Circuit Clerk to run the available reports regarding these type[s] of cases so this will not happen in the future." In August 2023, the Commission again contacted Judge McGaugh because the case remained pending and no judgment had been entered. Judge McGaugh responded the next day, "I submitted the judgment in person at my October law day in Ray County. I am at the State Fair until next week. I will follow up with the Clerks."

In February and March 2024, the Commission once again contacted Judge McGaugh asking about the lack of a judgment in the case. In response, Judge McGaugh again stated he had hand-delivered the judgment to the court clerk in October 2022 and was unaware a judgment had not been filed until the Commission contacted him. Judge McGaugh also specifically named the clerk to whom he had allegedly delivered the judgment in October 2022 but said he possessed no documents showing he had delivered the judgment to the clerk. The named clerk denied ever receiving or losing the judgment.

The record also indicates Judge McGaugh knew or should have known the case remained under advisement. Docket entries show the parties asked about the status of the case on numerous occasions. Judge McGaugh's email exchanges with the clerk's office and the parties' attorneys indicate he knew or should have known the case was still under advisement, and no judgment had been entered in the case. While many emails asking about the status of the judgment went unanswered, Judge McGaugh replied to a few emails with responses such as "working on it" and "[i]t's getting out this week." In a later March 2024 response to the Commission, Judge McGaugh stated he learned the

3

judgment had not been filed when counsel filed a notice of status hearing in September 2023.

Based on these facts, the Commission found Judge McGaugh knew or should have known the case remained under advisement. The Commission also found Judge McGaugh was untruthful with the Commission on multiple occasions by making false claims related to the entry of the judgment.

Count 2 alleged Judge McGaugh failed to rule timely in a case involving a motion to modify child custody and child support obligations by taking the case under advisement in April 2018 but not entering judgment until April 2024. In April 2019, the parties' attorneys emailed Judge McGaugh asking why the judgment had not been entered, telling him new disputes had arisen between the custodial parents while the case remained pending and emphasizing it was critical Judge McGaugh enter a judgment to avoid the custodial parents returning to court. Judge McGaugh responded, "I intend to get the pending judgment out this week." In December 2019 and June 2020, the docket sheet shows Judge McGaugh held a settlement conference and status hearing. In December 2020, the mother's attorney moved for a mistrial. The motion remained pending until April 2024, at which time Judge McGaugh dismissed "all pending motions" and entered judgment. Based on these facts, the Commission found Judge McGaugh knew or should have known the case remained under advisement.

In Counts 3 through 10, the Commission alleged Judge McGaugh failed to rule timely in multiple other cases and concluded Judge McGaugh knew or should have known the cases remained under advisement:

4

- Count 3—two consolidated cases involving minor guardianship and child custody, which Judge McGaugh took under advisement in May 2019. Judge McGaugh did not enter judgment in the minor guardianship case until April 2024. The Commission alleges Judge McGaugh still has not entered judgment in the child custody case, and it remains under advisement. From October 2019 to July 2022, the clerk's office emailed Judge McGaugh multiple times to ask about the cases. Judge McGaugh replied to only one of these emails.

- Count 4—a dissolution case involving custody of a minor child, which Judge McGaugh took under advisement in October 2019. Judge McGaugh did not enter judgment until April 2024. In March 2020, the mother's attorney emailed Judge McGaugh asking whether Judge McGaugh needed anything more from the parties. Two days later, Judge McGaugh responded, "I am good. Thanks for the note."

- Count 5—a paternity case filed by a father seeking custody and child support, which Judge McGaugh took under advisement in February 2020. The Commission alleges Judge McGaugh still has not entered judgment, and the case remains under advisement. In December 2020, the father's attorney emailed Judge McGaugh asking for a status update; in March 2021, the father's attorney again inquired and attached a proposed judgment. In July 2021, the father filed a motion to reopen evidence. In November 2021, Judge McGaugh heard arguments on the father's motion and again took the case under advisement. In March 2023, the father filed a second motion to reopen evidence. In April 2024, Judge McGaugh entered a note on the docket sheet stating, "Conference call held. Parties are not wanting to move forward to reopen evidence after [guardian ad litem speaks] with children. Matter will be rescheduled with judgment to be entered."

- Count 6—two cases requesting orders of protection, which Judge McGaugh took under advisement in May 2023. Judge McGaugh did not enter judgment until February 2024.[3]

---

[3] In February 2024, docket entries for both cases noted, "Court, on its on [sic] discretion, kept this cause under advisement to keep ex parte issued for safety of parties and community considering ongoing criminal matters and past criminal and civil proceedings." An ex parte order of protection is statutorily defined as "an order of protection issued by the court before the [person who allegedly committed a wrongful

- Count 7—a case to modify child custody, which Judge McGaugh took under advisement in September 2023. Judge McGaugh did not enter judgment until April 2024. In September 2023, the parties' attorneys emailed Judge McGaugh proposed judgments.

- Count 8—a case seeking to modify a dissolution decree by terminating one parent's parental rights and child support obligations, with the parties consenting or agreeing to judgment and filing a proposed judgment in October 2023. The Commission alleges Judge McGaugh still has not entered judgment, and the case remains under advisement.

- Count 9—a dissolution case, which Judge McGaugh took under advisement in June 2018. Judge McGaugh did not enter judgment until October 2021; then, after appeal, Judge McGaugh again took the case under advisement in April 2022 and did not enter judgment until November 2022. From January 2019 to January 2021, the parties continually contacted the clerk's office and Judge McGaugh to ask about the case's status. Judge McGaugh replied to one of these emails – in December 2019 – stating, "Finishing up right now. This week." In January 2021, the husband sent Judge McGaugh a letter stating, "Judge … I just want my divorce so I can move on with my life. Thank you for your time." After Judge McGaugh took the case under advisement for the second time, both parties' attorneys emailed Judge McGaugh proposed judgments, and the clerk's office followed up about the case on multiple occasions. Judge McGaugh replied to only one of these emails.

- Count 10—a small claims case, which Judge McGaugh took under advisement in October 2021. Judge McGaugh did not enter judgment until May 2022.

---

act] has received notice of the petition or an opportunity to be heard on it." Sec. 455.010(6). In other words, an ex parte order of protection provides temporary relief until the circuit court notifies the alleged offending party and holds a hearing on the allegations. If the allegations are proven by a preponderance of the evidence at the hearing, then "the court shall issue a full order of protection …." Sec. 455.040.1(1). The statute contemplates the court ruling on the pending petition and does not grant the court discretion to extend the ex parte order indefinitely. All statutory references are to RSMo Supp. 2021.

Count 11 alleged Judge McGaugh failed to provide a written response to the Commission's June 20, 2024, certified letter and email asking him to respond within 10 days to allegations he had not entered judgment in a timely manner in five cases and failed to file an accurate report of his cases under advisement for 90 days or more.

Count 12 alleged Judge McGaugh failed to timely and accurately submit reports listing his cases under advisement for 90 days or more. The Commission cited more than 40 instances of Judge McGaugh failing to properly include a case in the report.

In its notice, the Commission found Judge McGaugh's conduct as alleged in the 12 counts violated Rules 2-1.2, 2-2.1, 2-2.5, and 2-2.7 of the Code of Judicial Conduct and constituted "misconduct" and "incompetency" under article V, section 24 of the Missouri Constitution. The Commission additionally found Judge McGaugh's conduct as detailed in counts 1, 9, 11, and 12 violated Rule 2-2.16. As relevant here, the Missouri Code of Judicial Conduct provides:

A judge shall comply with the law, including the Code of Judicial Conduct.

Rule 2-1.1.

A judge shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety.

Rule 2-1.2.

The duties of judicial office, as prescribed by law, shall take precedence over a judge's personal and extrajudicial activities.

Rule 2-2.1.

(A) A judge shall perform judicial and administrative duties competently and diligently.

7

(B) A judge shall cooperate with other judges and court officials in the administration of court business.

Rule 2-2.5(A)-(B).

A judge shall hear and decide matters assigned to the judge, except when recusal is appropriate under this code or other law.

Rule 2-2.7.

A judge shall cooperate and be candid and honest with judicial and lawyer disciplinary agencies.

Rule 2-2.16(A).

Judge McGaugh submitted an undated response to the notice in which he admitted all allegations of misconduct in the notice, offered to begin mental health counseling immediately and attend new judge training in 2025, and requested a three-month suspension.

In October 2024, Judge McGaugh submitted to the Commission a "Stipulation and Waiver" in which he said he "stipulates and admits to the truth and accuracy of the allegations contained in the [notice and] … waives a hearing in this matter pursuant to Supreme Court Rule 12.05 and 12.07, appeal pursuant to Supreme Court Rule 12.08 and service … pursuant to Supreme Court Rule 12.08."

In November 2024, Judge McGaugh's mental health professional submitted to the Commission a medical statement with medical records attached. The statement asked for consideration of Judge McGaugh's mental disability disorder as a mitigating factor and indicated the disorder could affect his ability to perform the duties of his office with efficiency.

8

In December 2024, the Commission filed with this Court its findings of fact, conclusions of law, and recommendation. The Commission found the facts and legal conclusions in the notice were true and accurate, and Judge McGaugh had committed misconduct as specified in the notice. The Commission also found Judge McGaugh has a mental disability disorder, but the disorder should improve with time and treatment. The Commission noted Rule 5.285(b) provides in attorney disciplinary proceedings a mental disability disorder is not a defense to allegations of misconduct but may be considered a mitigating factor in determining appropriate discipline.[4] The Commission considered in mitigation Judge McGaugh's mental disability disorder and his stipulation and waiver. The Commission recommended this Court suspend Judge McGaugh for six months without pay and order continued monitoring by the Commission as follows: (1) the Commission will monitor Judge McGaugh's mental health treatment during the suspension and direct him to provide monthly mental health reports from his treating mental health professional with such reports providing a current diagnosis, course of

---

[4] Rule 5.285(b) provides:

> A mental disorder, including, but not limited to, substance abuse or dependency, is not a defense to allegations of professional misconduct but may be considered as a mitigating factor in determining appropriate discipline. Demonstration of management of the mental disorder will be considered in determining whether to impose discipline less than that which would have been imposed upon a lawyer in similar circumstances where a mental disorder was not present, but does not in itself entitle the person to imposition of a lesser discipline. Protection of the public and the integrity of the legal profession shall be the primary issues in determining whether the person will be permitted to practice on probation pursuant to Rule 5.175 or otherwise.

treatment, and prognosis; (2) two months prior to his completion of his suspension, the Commission will require Judge McGaugh to submit to an independent mental health examination at his expense by a mental health professional of the Commission's choosing; and (3) the Commission will review the examination before his suspension ends and determine whether to recommend the Court order Judge McGaugh to enter disability retirement based on mental infirmity or have the Commission continue to monitor his treatment after his suspension ends.

In January 2025, Judge McGaugh filed in this Court a one-page brief with exhibits.[5] In the brief, Judge McGaugh said he "objects to the recommendation of the Commission and hereby requests oral argument pursuant to Missouri Supreme Court Rule 12.08." In one of the exhibits, Judge McGaugh stated: "Some new information has become present that I would request be considered before the Court decides the punishment for the misconduct that I have fully admitted." He also asked for the Court not to suspend him or, should the Court suspend him, that any suspension be served under a disability retirement. Judge McGaugh stated he had "no objections to the ongoing mental health treatments and the mental health evaluation as recommended."

This Court ordered Judge McGaugh to show cause why the stipulation and waiver he executed did not foreclose his right to exercise the provisions of Rule 12.08. In his response, Judge McGaugh stated he "did not object to the findings of the Commission" and "seeks to orally submit to the Court information regarding his mental health that has

---

[5] This Court sustained Judge McGaugh's motion to file the documents out of time.

taken place" since his filing of the stipulation and waiver. Judge McGaugh stated he "only seeks to address the Court regarding the Courts [sic] potential order regarding punishment of [Judge McGaugh]."

On January 28, 2025, this Court entered its order overruling Judge McGaugh's request for oral argument. On February 10, 2025, Judge McGaugh requested, and this Court granted, leave to supplement the record. On February 11, 2025, Judge McGaugh provided additional medical information from his mental health professional.

**Standard of Review**

"This Court has the ultimate responsibility to 'remove, suspend, discipline or reprimand any judge of any court.'" *In re Hill*, 8 S.W.3d 578, 581 (Mo. banc 2000) (quoting Mo. Const. art. V, sec. 24.3). "This Court is not required to adopt the recommendation of the commission in a judicial disciplinary proceeding. The ultimate responsibility to 'remove, suspend, discipline or reprimand any judge of any court' is entrusted to this Court." *In re Baber*, 847 S.W.2d 800, 802 (Mo. banc 1993) (quoting Mo. Const. art. V, sec. 24.3). "The Commission may not impose discipline. Only this Court may do that. As we have said, the Commission's recommendations are subject to our independent review. This is the ultimate guarantee of due process." *In re Elliston*, 789 S.W.2d 469, 473 (Mo. banc 1990) (internal citation omitted).

"This Court independently reviews the evidence and the Commission's fact findings." *Hill*, 8 S.W.3d at 581. When "credibility is at issue, this Court gives substantial consideration and due deference to the Commission's ability to judge the credibility of witnesses appearing before it." *Id.* "Because a disciplinary proceeding is

11

civil rather than criminal, the charges must be proved by a preponderance of the evidence." *Id.* The purpose of judicial discipline is not to punish a judge for criminal or other wrongful conduct "but rather to maintain standards of judicial fitness." *Id.* at 582 (internal quotation omitted).

## Analysis

### The Court suspends Judge McGaugh without pay for one year

Because Judge McGaugh admitted the allegations of misconduct brought against him by the Commission, the sole issue before the Court is what discipline it should impose, bearing in mind this Court has said the purpose of judicial discipline is to maintain the standards of judicial fitness. *Id.* By any measure, Judge McGaugh's conduct did not demonstrate judicial fitness. Instead, his conduct, as charged and found by the Commission and as admitted by Judge McGaugh, violated Rules 2-1.2, 2-2.1, 2-2.5, 2-2.7, and 2-2.16 and amounted to misconduct and incompetency warranting discipline under article V, section 24.3 of the Missouri Constitution. The Commission recommended a suspension of six months without pay. While the Court respects and appreciates the Commission and its ongoing investigation over a period of years and gives careful consideration to its recommendations, the Court believes the facts and circumstances of this case warrant harsher discipline to maintain the standards of judicial fitness.

Judge McGaugh contested none of the 12 counts the Commission alleged. The uncontested allegations establish Judge McGaugh began serving as a judge in 2017 and has had a pattern and practice of performance issues beginning as early as 2018 and

12

continuing for many years. His performance issues extend well beyond his own grossly untimely performance of his duties. The uncontested allegations also establish he was untruthful with attorneys, parties, and the Commission on multiple occasions. He repeatedly failed to respond to court staff and, even worse, blamed court staff when he knew he failed to perform his judicial duties. He went so far as to falsely claim a clerk, whom he identified by name, lost a judgment for filing he never actually gave her. Although the record does not reflect any court employee was disciplined due to Judge McGaugh's misconduct, his misconduct easily could have led to such consequences.

Perhaps most significantly, Judge McGaugh's misconduct directly harmed multiple parties, among them some of Missouri's most vulnerable citizens, including families and children; those facing financial difficulties; and those seeking orders of protection. One litigant faced foreclosure of her home due to Judge McGaugh's continued failure to enter a judgment. This litigant and others had their divorces delayed for years due to Judge McGaugh's misconduct. Because of Judge McGaugh's misconduct, parties could not obtain finality in critically important, time-sensitive cases involving divorce, child custody, child support, minor guardianship, paternity, and orders of protection.

There is no question Judge McGaugh had notice of the harm his misconduct was causing. Parties, attorneys, and court staff repeatedly contacted him to no avail, including an attorney who notified Judge McGaugh that his inaction was exposing the attorney's client to the threat of foreclosure. In a case to modify child custody and child support, Judge McGaugh was notified of new disputes arising between the custodial

13

parents. Despite repeated requests he enter a judgment to avoid the parties returning to court, Judge McGaugh did not enter judgment for five years.

In sum, this is an egregious case of multiple instances in which a judge completely failed to timely perform his duties, compounded by a pattern of dishonesty toward lawyers, parties, court staff, and the Commission. At the time of this opinion issuing, multiple court cases remain unresolved due to Judge McGaugh's delays, which have continued despite this extended disciplinary proceeding. For example, in a case to terminate parental rights and child support, the parties reached agreement and submitted a proposed consent judgment in October 2023, but Judge McGaugh has not entered a judgment. His misconduct exhibits a lack of judicial fitness and reflects poorly on the entire Missouri judiciary. In these circumstances, the Court concludes discipline in excess of the Commission's recommendation is warranted to maintain the standards of judicial fitness.[6] The Court orders Judge McGaugh suspended without pay for one year beginning March 1, 2025, with the continued monitoring recommended by the Commission.

**The Court denies Judge McGaugh's request to serve his suspension under disability**

Judge McGaugh requested that, should this Court suspend him, he be allowed to serve his suspension under a disability retirement. Were this Court to honor Judge

---

[6] The Court notes the Commission viewed as mitigating factors Judge McGaugh's mental disability disorder and his filing of the stipulation and waiver admitting to the alleged misconduct and waiving appeal, and the Court has considered these factors in imposing discipline against Judge McGaugh.

14

McGaugh's request, however, it would have to convert this proceeding from one of discipline for misconduct to one of disability retirement.

While article V, section 24.3 and Rule 12.07 govern discipline for misconduct, article V, section 24.2 and Rule 12.05 govern retirement due to permanent sickness or physical or mental infirmity. The Commission made no findings under article V, section 24.2 and did not seek Judge McGaugh's retirement due to physical or mental disability. The Commission is not precluded from conducting future proceedings under article V, section 24.2 and may have anticipated such future proceedings when it recommended an independent mental health examination before any suspension ends and monitoring and treatment while Judge McGaugh is serving his suspension. Regardless, no disability retirement proceedings are pending before this Court; rather, the Commission charged, proved, and found multiple instances of misconduct and incompetency under article V, section 24.3 of the Missouri Constitution. Accordingly, this Court lacks authority under article V, section 24 to convert this proceeding to a disability retirement. Judge McGaugh's request is denied.

**Judge McGaugh waived oral argument in his stipulation and waiver**

On January 28, 2025, the Court overruled Judge McGaugh's request for oral argument. As authorized by article V, section 24.6 of the Missouri Constitution, Rule 12.08 provides the procedure for requesting oral argument in a judicial discipline case: "This Court shall set the matter of the recommendations of the Commission for oral argument if requested by respondent [Judge McGaugh]." In October 2024, Judge McGaugh signed and filed with the Commission a stipulation and waiver. In that

15

document, he admitted "the truth and accuracy of the allegations" in the Commission's notice and waived "appeal pursuant to Supreme Court Rule 12.08." By his stipulation and waiver, Judge McGaugh waived appeal under Rule 12.08, including any right to oral argument.

Judge McGaugh asserts oral argument is warranted because he has new information about his mental health to submit to the Court. Even had this Court set the matter for oral argument, the Court could not have considered Judge McGaugh's new information because the Court is limited to reviewing the proceedings before the Commission. *In re Voorhees*, 739 S.W.2d 178, 185 (Mo. banc 1987) ("We can order judicial discipline only in accordance with the findings of the Commission."); Rule 12.07(c) ("[T]his Court shall review the record, consider the recommendation of the Commission and make such order as to respondent as it deems just."). Because Judge McGaugh waived oral argument and because this Court has no authority to consider his new information, this Court properly overruled his request to set this case for oral argument.

**This Court has authority to deviate from the Commission's recommendations**

The separate opinions assert this Court lacks authority under the plain language of article V, section 24.3 of the Missouri Constitution to impose any discipline other than what the Commission recommended. This position is problematic in multiple respects: The separate opinions would so hold even though the plain language of article V, section 24.3 has remained unchanged since its adoption at a special election in August 1976 and this Court never has interpreted the plain language of article V, section 24.3 as the

16

separate opinions do now; the separate opinions raise this issue *sua sponte* when, in fact, Judge McGaugh acknowledged this Court's authority to deviate from the Commission's recommendation when he asked the Court not to suspend him or, alternatively, that he receive a disability retirement as opposed to the recommended suspension; this position would require the Court to overrule *In re Buford*, 577 S.W.2d 809 (Mo. banc 1979), *In re Conard*, 944 S.W.2d 191 (Mo. banc 1997), and numerous other cases; and such an interpretation is contrary to this Court's own Rule 12.07 interpreting article V, section 24.3 as requiring the Court to make ultimate decisions concerning judicial discipline in Missouri.

In both *Buford* and *Conard*, this Court viewed itself as free to impose the discipline it saw fit in considering the same language in article V, section 24.3 when this Court imposed discipline less than the Commission recommended.[7] In *Buford*, the Commission recommended removal of the judge from office, and this Court suspended the judge for 30 days without pay. 577 S.W.2d at 839-40. The Court issued its opinion

---

[7] More recently, in *In re Honorable Barbara T. Peebles*, SC92811, this Court again deviated from the Commission's recommendation when it entered an order in March 2013 suspending Judge Peebles without pay for six months even though five commission members (more than the four required by article V, section 24.3) recommended removal as the appropriate sanction and one member recommended a six-month suspension. Although a written order of this Court lacks precedential value, this is another example of the Court deviating from the Commission's recommendation and also is another example of the Court declining an opportunity to address *sua sponte* its authority under article V, section 24.3. *See In re Neill*, 681 S.W.3d 194, 200 (Mo. banc 2024) ("[T]his Court's dispositions by written order without opinion have no precedential value." (citing Rule 84.16(b))).

17

in February 1979 and noted article V, section 24.3 took effect January 2, 1979. *Id.* at 812 n.1. The Court extensively analyzed the virtually identical language in article V, section 27.3 of the 1970 Missouri Constitution and noted: "This [C]ourt derives its power and authority from the constitution of the State of Missouri as does the Commission. Each has a separate function to perform under that constitution with respect to the discipline of the judiciary in this state." *Id.* at 840.[8] The Court also explicitly stated: "It is also clear that the Commission cannot effect discipline. The constitution requires that discipline, when adjudicated, be adjudicated and imposed by the Supreme Court en banc, and, although deference should be shown to the recommendations of the Commission, the [C]ourt is not bound by them." *Id.* at 815. *Buford* is entitled to great weight as it was issued immediately after article V, section 24.3 of the Missouri Constitution took effect, and it explicitly references that provision in interpreting virtually identical language in the 1970 Missouri Constitution. In the nearly 50 years since *Buford*, article V, section 24.3 has remained unchanged, and the Court has continued to follow *Buford*.

In *Conard*, the Commission recommended the judge be suspended for 90 days without pay, and this Court suspended the judge for 30 days without pay. 944 S.W.2d at

---

[8] Mo. Const. art. V, sec. 27.3 (1970) provided:

> Upon recommendation by an affirmative vote of at least four members of the commission, the supreme court en banc, upon concurring with such recommendation, shall remove, suspend, or discipline any judge or magistrate of any court … for the commission of a crime, or for misconduct, habitual drunkenness, willful neglect of duty, corruption in office, incompetency or any offense involving moral turpitude, or oppression in office. No action taken under this section shall be a bar to or prevent any other action authorized by law.

18

200, 205. The Court concluded: "While we concur with the recommendation of the Commission that Judge Conard is guilty of misconduct as charged in Counts 4, 5, and 8, we believe the punishment assessed by the Commission was too harsh." *Id.* at 205.

"Our common law system has developed on the assumption legal precedents must be followed." *Lucas v. Ashcroft*, 688 S.W.3d 204, 213 (Mo. banc 2024), *as modified on denial of reh'g* (June 4, 2024). "This principle, the doctrine of *stare decisis*, ensures similar cases are treated similarly in accordance with basic principles of justice." *Id.* "[M]ere disagreement by the current Court ... is not a satisfactory basis for violating the doctrine of stare decisis[.]" *Id.* (second alteration in original) (internal quotation omitted). At most, the separate opinions establish some judges of the current Court disagree with how *Buford* and *Conard* interpreted the plain language of article V, section 24.3. This is not a basis for disregarding this Court's precedent.[9]

Additionally, the plain language of article V, section 24.3 does not limit this Court's authority to impose such discipline as it sees fit after the Commission recommends discipline be imposed. Article V, section 24 assigns to the Commission the critically important role of factfinder when section 24.1 specifies "[t]he Commission shall receive and investigate all requests and suggestions for retirement for disability, and all

_____

[9] As this Court noted in *Lucas*, "judicial precedent is not absolute." 688 S.W.3d at 213. Departure from precedent may be warranted if prior decisions are "evidently contrary to reason," "flatly absurd or unjust," or "clearly erroneous or manifestly wrong." *Id.* at 214 (internal quotations omitted). None of the justifications for departure from precedent exist here, and the separate opinions do not argue otherwise.

19

complaints concerning misconduct of all judges[.]" Then, as relevant here, article V,

section 24.3 provides:

> Upon recommendation by an affirmative vote of at least four members of the [C]ommission, the supreme court en banc, upon concurring with such recommendation, shall remove, suspend, discipline or reprimand any judge of any court or any member of any judicial commission or of this commission, for the commission of a crime, or for misconduct, habitual drunkenness, willful neglect of duty, corruption in office, incompetency or any offense involving moral turpitude, or oppression in office. No action taken under this section shall be a bar to or prevent any other action authorized by law.

The separate opinions focus on the word "concurring" and suggest this word gives

the Court authority to "concur" or "agree" with the Commission's recommended

discipline or do nothing. A more logical interpretation of article V, section 24.3 is, if this

Court "concurs" or "agrees" with the Commission's recommendation discipline should

be imposed, then the Court may impose discipline as it deems fit. If this Court disagrees

with the Commission's recommendation to impose discipline, the Court will do nothing,

i.e., impose no discipline.

Further, the separate opinions' interpretation assumes the Commission makes a

single "recommendation." But article V, section 24.3 contains no requirement of a single

"recommendation." Instead, it provides, "[u]pon recommendation by an affirmative vote

of at least four members of the [C]ommission, the supreme court en banc, upon

concurring with such recommendation[,]" meaning at least four Commission members

must recommend discipline in some form, with this Court then responsible for

determining discipline. Nothing in article V, section 24.3 prohibits each of the four

Commission members from voting for a different form of discipline (i.e. one vote for

20

reprimand, one vote for a six-month suspension, one vote for a nine-month suspension, and one vote for removal). In that case, there would be no single "recommendation" for the Court to follow or not.

This is not merely a hypothetical. In *Peebles*, one Commission member recommended a six-month suspension and five Commission members recommended removal. The Commission did not make a single "recommendation" to the Court but, instead, advised of the differing votes.[10] The plain language of article V, section 24.3 places the ultimate responsibility for judicial discipline with this Court after at least four Commission members have voted for some discipline.

This interpretation recognizes and honors the use of "recommendation" in article V, section 24.3. A "recommendation" is not binding. *See Recommendation*, *Black's Law Dictionary* (12th ed. 2024) (defining "recommendation" as "[a] specific piece of advice about what to do, esp. when given officially"). This interpretation also is consistent with the meaning of "recommendation" as used elsewhere in the Missouri Constitution. *See* Mo. Const. art. IV, sec. 24 (titled "Governor's budget and recommendations as to revenue[,]" and providing the governor shall recommend a budget to the legislature); Mo. Const. art. IV, sec. 9 (titled "Governor's messages and recommendations to assembly[,]"

---

[10] Here, the Commission recommended a six-month suspension without pay but appropriately noted the individual votes or recusals of the Commission members. The Commission indicated one member voted for more severe discipline, but the Commission did not specify what discipline that member recommended. In the future, to comply with article V, section 24.3, the Commission should provide the Court with each member's recommendation of discipline to be imposed (while maintaining the confidentiality of individual member votes or recusals) to help inform the Court's decision about any recommendation(s).

21

which provides the governor "shall recommend to [the general assembly's] consideration such measures as he shall deem necessary and expedient").

This interpretation also is in accord with *Buford* and *Conard* and numerous decisions of this Court holding this Court has ultimate responsibility for determining judicial discipline. *See, e.g.*, *Hill*, 8 S.W.3d at 581, 584 (recognizing "[t]his Court has the ultimate responsibility to 'remove, suspend, discipline or reprimand any judge of any court'" when it ordered a judge suspended without pay for rest of his term despite the Commission recommending his removal from office (quoting Mo. Const. art. V, sec 24.3)); *Baber*, 847 S.W.2d at 802; *Elliston*, 789 S.W.2d at 473; *Voorhees*, 739 S.W.2d at 180, 181 (stating the "ultimate decision on discipline, furthermore, is for this Court and not for the Commission" when ordering no discipline and a full discharge despite the Commission recommending a reprimand); *In re Kohn*, 568 S.W.2d 255, 256, 261 (Mo. banc 1978) (ordering a judge censured when the Commission had recommended a 90-day suspension without pay under article V, section 27 of the Missouri Constitution (1970)). Although these cases reflect the Court often has chosen to impose the Commission-recommended discipline or less, the Court has ultimate responsibility for judicial discipline in Missouri with authority to impose the Commission-recommended discipline or more or less discipline than recommended.[11]

---

[11] This Court's cases holding the Court under article V, section 24.3 has ultimate responsibility for judicial discipline in Missouri, including authority to deviate from the Commission's recommendations, are consistent with cases in other jurisdictions with similar constitutional provisions. The Mississippi Constitution provides: "On recommendation of the commission on judicial performance, the Supreme Court may

It is worth noting the separate opinions' argument is not new. In 1987, one of the concurring opinions in *Voorhees* asserted: "This Court's function in individual matters of discipline is limited to concurring with the Commission's recommendation and imposing appropriate discipline as permitted under the constitution, or in rejecting the Commission's recommendation and dismissing the charges." 739 S.W.2d at 191 (Robertson, J., concurring). The Court rejected the argument in 1987 and rejects it again today.

Further, this interpretation gives meaning to every word used in article V, section 24.3 by recognizing section 24.3 specifies "the supreme court en banc … shall remove, suspend, discipline or reprimand[.]" It would be nonsensical for section 24.3 to list each

---

remove from office, suspend, fine or publicly censure or reprimand any justice or judge of this state[.]" Miss. Const. art. 6, sec. 177A. Based on such language, the Mississippi Supreme Court has held it "is not bound by the Commission's findings, and [it] may impose additional sanctions. This is true even when the Commission and the judge enter into a joint recommendation-this Court's acceptance of the joint recommendation is not a certainty." *Miss. Comm'n on Jud. Performance v. Skinner*, 119 So. 3d 294, 297, 299 (Miss. banc 2013) (ordering a judge suspended without pay for 30 days, publicly reprimanded, and required to pay a $1,000 fine and $100 costs after the Commission and the judge had jointly recommended a public reprimand with the same fine and costs). The Arizona Constitution provides: "On recommendation of the commission on judicial conduct, the supreme court may retire a judge for disability that seriously interferes with the performance of his duties and is or is likely to become permanent, and may censure, suspend without pay or remove a judge[.]" Ariz. Const. art. 6.1, sec. 4(A). The Arizona Supreme Court has interpreted such language to mean "the ultimate authority to determine proper sanctions rests with th[e] court." *In re Jett*, 882 P.2d 414, 419 (Ariz. banc 1994) (ordering a judge suspended from holding judicial office for the remainder of her term despite the commission recommending a public censure and suspension without pay for only 60 days).

potential form of discipline if this Court lacks authority to do anything other than impose the discipline the Commission recommended.

This interpretation also is consistent with article V, section 27, which also was adopted at the special election in August 1976 and provided transition provisions for those constitutional provisions amended at the August 1976 election, including in section 27.24, which provides:

> Judges, other than municipal judges, not selected under the provisions of sections 25(a)-(g) of this article who on the effective date of this article or within six months thereafter, are seventy years of age or older, may petition the [Commission] to continue to serve until age seventy-six if he has not completed a total of twelve years of service as a judge. Judges, other than municipal judges, not selected under the provisions of sections 25(a)-(g) of this article who are in office on the effective date of this article, may, within six months before attaining the age of seventy years, petition the [Commission] to be allowed to serve after he has attained that age until age seventy-six or has completed a total of twelve years of service as a judge, whichever shall first occur. If the [C]ommission finds the petitioner to be able to perform his duties and approves such service, the petitioner may continue to serve as such a judge until age seventy-six if he has not completed a total of twelve years of service as a judge at such age.

Article V, section 27.24 assigned the Commission sole responsibility and authority for determining whether an active judge at the time of the amendments to article V should continue to serve for a certain period. Article V, section 24.3 stands in sharp contrast when it provides: "the supreme court en banc, upon concurring with such recommendation, shall remove, suspend, discipline or reprimand any judge[.]"

This interpretation also is consistent with article V, sections 24.2 and 24.5, even though those sections are not at issue. Section 24.2 again uses the word "recommendation" and specifies "[u]pon recommendation … the supreme court … shall

24

retire from office any judge … who is found to be unable to discharge the duties of his office with efficiency because of permanent sickness or physical or mental infirmity." Similarly, section 24.5 uses the word "recommendation" and specifies "[o]n recommendation … the supreme court shall suspend a judge from office without salary" when the judge "pleads guilty or no contest to, or is found guilty of, an offense punishable as a felony under the laws of Missouri or the United States, or of any other offense that involves moral turpitude." Both sections, consistent with section 24.3, do not dictate the Commission's recommendation, and both sections make clear the discipline suggested by the Commission is a "recommendation" only. It is still this Court's responsibility to determine whether to follow the Commission's "recommendation." For example, if the Commission recommends retirement under section 24.2 due to "permanent sickness or physical or mental infirmity," this Court would not follow the Commission's recommendation if the Court disagrees with the Commission's findings of fact and conclusions of law as to whether the judge has a "permanent sickness or physical or mental infirmity." Further, while sections 24.2 and 24.5 seemingly limit this Court to retirement (section 24.2) or suspension (section 24.5) if this Court agrees with the Commission's recommendation, these limits stand in sharp contrast to section 24.3, which gives the Court much discretion in stating the Court "shall remove, suspend, discipline or reprimand any judge[.]"

This interpretation of the plain language of article V, section 24.3 also is consistent with Rule 12.07, which governs discipline for judicial misconduct and sets out the procedures to be followed for proceedings under article V, section 24.3. Rule

25

12.07(c) provides, "if at least four members of the Commission … find that the person proceeded against is guilty and further find that such person should be removed from office, suspended from the performance of his or her duties for a period of time, or otherwise disciplined," then the Commission "shall make written findings of fact and conclusions of law with respect to the issues and shall make its recommendations to this Court." The use of "recommendations" is significant. In Rule 12.07(c), the Court recognized there is no requirement in article V, section 24.3 the Commission make a single recommendation binding on this Court. Rule 12.07(c) then provides "this Court shall review the record, consider the recommendation of the Commission and make such order as to respondent as it deems just." Based on the separate opinions' analysis, this Court's own Rule 12.07 is wrong and must be set aside because Rule 12.07(c) interprets article V, section 24.3 as granting the Court constitutional authority to "make such order as to respondent as it deems just," an interpretation the separate opinions now reject. The separate opinions' analysis is flawed and inconsistent with Rule 12.07.

This interpretation also honors the separation of powers and this Court's "general superintending control over all courts and tribunals," as set out in article V, section 4.1. The separate opinions cite article V, section 4.1 and assert "only this Court, and not the Commission, can actually impose discipline for judicial misconduct or retire a judge for physical or mental disability pursuant to article V, section 24," but then the separate opinions inconsistently assert the Court has authority only to impose discipline recommended by the Commission or do nothing. This patently contradicts article V, section 4.1 and leads to the absurd result of the separate opinions declaring only the Court

26

has disciplinary authority while in the next breath asserting the Court has no authority to impose discipline other than that recommended by the Commission, meaning the Commission, not this Court, has ultimate disciplinary authority. The separate opinions' interpretation of article V, section 24.3 impermissibly delegates to the Commission authority explicitly placed in the Court under both article V, section 24.3 and article V, section 4.1. *See also State ex inf. Ashcroft v. Alexander*, 673 S.W.2d 36, 38 (Mo. banc 1984) (explaining in the context of *quo warranto* proceedings, this Court has jurisdiction under article V, section 4.1 of the Missouri Constitution and the appointed master's "findings of fact and conclusions of law constitute recommendations and are not binding on this Court").

## Conclusion

The record before this Court, which Judge McGaugh does not contest, demonstrates the Commission proved by a preponderance of the evidence Judge McGaugh's conduct violated Rules 2-1.2, 2-2.1, 2-2.5, 2-2.7, and 2-2.16 and amounted to misconduct and incompetency under article V, section 24 of the Missouri Constitution. The Court orders the Honorable Joe Don McGaugh suspended without pay for one year beginning March 1, 2025, and subject to continued monitoring by the Commission on the terms recommended by the Commission. No Rule 84.17 motions are permitted.

_____
Ginger K. Gooch, Judge

Russell, C.J., Ransom and Broniec, JJ., concur;
Powell, J., dissents in separate opinion filed;
Wilson, J., concurs in opinion of Powell, J.;
Fischer, J., filed separate opinion.



# SUPREME COURT OF MISSOURI
## en banc

IN RE:  THE HONORABLE JOE DON )
MCGAUGH, )
 ) No. SC100875
Respondent. )

## DISSENTING OPINION

I respectfully dissent.  I concur with the principal opinion that Judge McGaugh should be disciplined for misconduct as the Commission on Retirement, Removal and Discipline found.  I dissent, however, from the principal opinion's holding that this Court has the authority to deviate from the Commission's recommended discipline.  Because this Court lacks the authority to impose discipline that exceeds the Commission's recommendation, this Court should accept the Commission's recommendation and suspend Judge McGaugh without pay for six months.

Article V, section 24.1 of the Missouri Constitution authorizes the establishment of the Commission to "receive and investigate all requests and suggestions for retirement for disability, and all complaints concerning misconduct of all judges . . . ."  The Commission consists of six members:  two citizens appointed by the governor; two lawyers appointed

by The Missouri Bar; one court of appeals judge selected by a majority of judges from the court of appeals; and one circuit court judge selected by a majority of circuit court judges of this state. Mo. Const. art. V, sec. 24.1. Pursuant to its constitutional authority, this body is empowered and entrusted to govern the retirement of judges due to disability and the disciplining of judges due to misconduct. *Compare* Mo. Const. art. V, sec. 24.2, *with* Mo. Const. art. V, sec. 24.3.

It is no coincidence the state constitution juxtaposes the provisions for selecting and retaining judges with those establishing the Commission and subjecting judges to retirement and discipline. The Commission is intended to play a vital role in regulating the judiciary and assuring the people of this state that Missouri judges are – and remain – qualified to serve.

Commonly referred to as the Missouri Plan, article V, section 25 governs the process for selecting and retaining the judges of this state.[1] The Missouri Plan provides the citizens of this state with a voice in the appointment and retention of judges. The public, however, must be assured that the judges who are appointed under the Missouri Plan or elected in partisan elections remain physically and mentally able to serve and have not engaged in misconduct when they seek retention or reelection. In this manner, the Commission

---

[1] The plan provides that judges appointed pursuant to section 25(a) must periodically stand for retention by the vote of the people. Mo. Const. art. V, sec. 25(c)(1). The judges subject to the Missouri Plan include the judges of the Supreme Court of Missouri, the Missouri Court of Appeals, and six circuit courts – Clay County, Jackson County, Platte County, St. Louis County, the City of St. Louis, and Greene County. *See* Mo. Const. art. V, sec. 25(a). These judges run in retention elections after one year on the bench and at the end of each of their terms. All other judges in the state are selected or retained in office by running for their seats in partisan elections.

performs an important function in ensuring the judges of this state are qualified to serve, and, due to this oversight, it is no surprise that the vast majority of judges who seek retention under the plan or reelection in partisan elections are retained or reelected.

Because the constitution created the Commission to regulate the judiciary and protect the people of this state, the independence of the Commission is crucial. For this reason, the Missouri Constitution bestows substantive decision-making authority related to the removal and discipline of judges upon the Commission. This Court, however, retains "general superintending control over all courts and tribunals" under article V, section 4.1, so only this Court, and not the Commission, can actually impose discipline for judicial misconduct or retire a judge for physical or mental disability pursuant to article V, section 24.

These separate, independent roles are reflected in the language of the constitution. Regarding judicial discipline, the constitution provides:

> Upon recommendation by an affirmative vote of at least four members of the commission, the supreme court en banc, **upon concurring with such recommendation**, shall remove, suspend, discipline or reprimand any judge of any court . . . for the commission of a crime, or for misconduct, habitual drunkenness, willful neglect of duty, corruption in office, incompetency or any offense involving moral turpitude, or oppression in office.

Mo. Const. art. V, sec. 24.3 (emphasis added).

Unlike the attorney discipline process, over which this Court has absolute authority, the Missouri Constitution commits the disciplining of judges to the Commission. *See* Mo. Const. art. V, sec. 24. Only the Commission may bring charges of misconduct, and, when it does, unlike in attorney discipline cases, the Commission – and not this Court – is the

3

factfinder. Mo. Const. art. V, sec. 24.3. If misconduct is found, the Commission makes a recommendation of discipline to this Court, but only this Court may impose the recommended discipline. *Id.*

Article V, section 24.3 states this Court, "upon concurring with" the Commission's recommendation, "shall remove, suspend, discipline or reprimand any judge of any court" for the judge's misconduct. The plain language of section 24.3 gives this Court two choices: it may concur with the Commission's recommendation or it may not concur. If the Court does *not* concur with the Commission's recommendation, the Court lacks the constitutional authority to impose any form of discipline. If the Court concurs with the Commission, the plain language of section 24.3 provides this Court "shall" impose discipline, but it does not grant this Court authority to determine the form of discipline. The Court, therefore, must either impose or reject the discipline the Commission recommended.[2]

---

[2] The Court's authority relating to judicial retirement due to disability is even more limited. The constitution provides:

> Upon recommendation by an affirmative vote of at least four members of the commission, the supreme court en banc **shall** retire from office any judge . . . who is found to be unable to discharge the duties of this office with efficiency because of permanent sickness or physical or mental infirmity.

Mo. Const. art. V, sec. 24.2 (emphasis added). Notably, section 24.2 does not condition this Court's actions "upon concurring with" the Commission's recommendation, in contrast to section 24.3, which governs judicial discipline. By omitting this language and merely stating this Court "**shall** retire from office any judge," this Court is not authorized to accept or reject the Commission's recommendation. Mo. Const. art. V, sec. 24.2 (emphasis added). Instead, the Court is required to act upon the recommendation.

4

The principal opinion disagrees with this interpretation of article V, section 24. In making this argument, however, the principal opinion misunderstands the Commission's function in the judicial disciplinary process. The Commission's powers are granted by the constitution and serve as an important check on the judiciary. As the principal opinion notes, the constitution "assigns to the Commission the critically important role of factfinder." When the Commission submits its findings of fact, conclusions of law, and recommendation to this Court, as it did here, the Commission is not making a "recommendation" that this Court find misconduct and impose the appropriate discipline. Rather, the Commission makes a "finding" that a judge engaged in misconduct and then makes a "recommendation" that the judge be disciplined in a certain manner by way of removal, suspension, reprimand, or other discipline. Consequently, this Court is left to either accept or reject the Commission's recommended discipline depending on whether the Court finds the misconduct warrants the discipline recommended. Mo. Const. art. V, sec. 24.3; Rule 12.07(c).

The principal opinion attempts to bolster its interpretation of article V, section 24.3 by citing language from Rule 12.07. The principal opinion's broad interpretation of Rule 12.07 would permit this Court to impose discipline alternative to what the Commission has recommended, but this Court must, whenever possible, interpret its rules in a manner that is constitutional. *See No Bans on Choice v. Ashcroft*, 638 S.W.3d 484, 488 (Mo. banc 2022*)*; *see also State ex. rel. Vee-Jay Contracting Co. v. Neill*, 89 S.W.3d 470, 471-72 (Mo. banc 2002) ("Courts interpret Supreme Court Rules by applying principles similar to those

5

used for state statutes."). Accordingly, this Court cannot interpret Rule 12.07 as permitting this Court to impose alternative discipline because doing so conflicts with the constitution.[3]

The principal opinion is correct, however, that this Court has imposed discipline the Commission did not recommend on two occasions in written opinions. In *In re Buford*, 577 S.W.2d 809, 839-40 (Mo. banc 1979), and *In re Conard*, 944 S.W.2d 191, 205 (Mo. banc 1997), this Court rejected the Commission's recommended discipline and imposed alternative discipline. Although the Court was within its dominion to reject the recommended discipline, it overstepped its constitutional authority by imposing discipline the Commission did not specifically recommend. This Court cannot expand its authority beyond what is granted by the plain language of article V, section 24.3 of the Missouri Constitution. To the extent *Buford* and *Conard* hold otherwise, I would overrule these cases.[4]

---

[3] Further troubling, this Court under the principal opinion's reading of the Missouri Constitution would appear to be able to reject the Commission's recommendation of retirement due to disability under article V, section 24.2 despite the constitutional provision's mandatory language that this Court "shall" retire the judge upon the Commission's recommendation. This interpretation of section 24.2 not only conflicts with the plain language of the constitution but renders meaningless the additional language and requirement in section 24.3 that the Court concur with the recommendation before imposing discipline.

[4] "This Court has held that, under the doctrine of *stare decisis*, a decision of this Court should not be lightly overruled." *Eighty Hundred Clayton Corp. v. Dir. of Revenue*, 111 S.W.3d 409, 411 n.3 (Mo. banc 2003). Judicial precedent, however, is not absolute, and a departure from precedent is warranted when precedent is "clearly erroneous and manifestly wrong." *Lucas v. Ashcroft*, 688 S.W.3d 204, 214 (Mo. banc 2024) (internal quotations omitted). Moreover, *stare decisis* is more strictly observed in cases involving statutory interpretation compared with constitutional interpretation given that the legislature is presumed to rely on judicial decisions interpreting statutes. *See Ramos v. Louisiana*, 590 U.S. 83, 105 (2020) ("And the doctrine [of *stare decisis*] is at its weakest when we interpret

6

Because this Court lacks the authority to deviate from the Commission's recommended discipline, this Court should accept the Commission's recommendation and suspend Judge McGaugh without pay for six months.[5]

_____

W. Brent Powell, Judge

---

the Constitution . . . ."(internal quotation omitted)); 20 Am. Jur. 2d *Courts* sec. 136; *see also D.E.G. v. Juv. Officer of Jackson Cnty.*, 601 S.W.3d 212, 221 (Mo. banc 2020) (Powell, J., dissenting); *Templemire v. W & M Welding, Inc.*, 433 S.W.3d 371, 387 (Mo. banc 2014) (Fischer, J., dissenting).

[5] Without the limitation on the Court's authority to deviate from the Commission's recommended discipline, I may very well support a discipline far in excess of a six-month suspension for the reasons artfully articulated by the principal opinion and Judge Fischer's separate opinion.



# SUPREME COURT OF MISSOURI
## en banc

IN RE: THE HONORABLE JOE DON )
MCGAUGH, )
                      )       No. SC100875
           Respondent. )

**SEPARATE OPINION**

I concur in the dissenting opinion's analysis of article V, § 24.3 and the conclusion it requires this Court to either: (1) impose the Commission on Retirement, Removal and Discipline's recommended discipline; or (2) reject it and impose no discipline. I also agree the prior cases holding this Court may reject the Commission's recommended discipline and impose alternative discipline were wrongly decided, and I would no longer follow them. *See In re Buford*, 577 S.W.2d 809, 839-40 (Mo. banc 1979); *In re Conard*, 944 S.W.2d 191, 205 (Mo. banc 1997). In my view, because article V, § 24.3 constrains the disciplinary options in this case, it leaves this Court with an unfortunate choice: either accept a patently insufficient six-month suspension for serious and repeated judicial misconduct or reject the Commission's recommendation. I write separately to reemphasize the high standard the privilege of judicial service demands. Consequently, if constitutionally permissible, I would accept the Commission's factual findings, disregard

its recommended six-month suspension, and vote to remove Judge Joe Don McGaugh from office.

Courts, and the judges who serve therein, are constitutionally vested with the "judicial power" to enter and enforce judgments finally resolving legal disputes. Mo. Const. art. V, § 1. This Court's Code of Judicial Conduct recognizes the impact judicial power has on the lives of real people by requiring judges to ensure "[p]rompt disposition of the court's business" and to be "expeditious in determining matters under submission[.]" Rule 2-2.5, Cmt. [3].

Respondent's serial misconduct represents a near total abdication of these core responsibilities. In addition to the reputational harm to the court as an institution, Respondent placed multiple families in unnecessary and gut-wrenching legal limbo for years as critically important child custody and financial matters languished unresolved on his desk. To take just a few examples from the many in this case, there is no conceivable reason why a motion to modify child custody and child support obligations should be under advisement for a *half decade* before a decision is made; nor is there any excuse for not finalizing a *stipulated* motion agreeing to modify a dissolution decree for part of 2023, all of 2024, and well into 2025. This misconduct is inexcusable. It is made worse by the fact McGaugh violated Rule 2-2.16 by failing to be honest about his actions with the Commission.

The people who come before Missouri courts deserve timely answers, particularly when certainty in family life and finances is on hold while they wait. McGaugh was and is ethically obligated to provide those answers in a reasonably expeditious fashion. But he

2

repeatedly failed to do so.  McGaugh's repeated and astoundingly egregious failure to discharge his core judicial responsibilities is compelling evidence he is unfit to serve.  If the constitution—the ultimate legal authority—so permitted, I would vote to remove him from office.

_____

Zel M. Fischer, Judge
